MARTORELL ET AL., DEMANDANTES Y APELANTES, *v.* J. OCHOA Y HERMANO, DEMANDADOS Y APELADOS.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de títulos y reivindicación.

No. 1499.—Resuelto en julio 28, 1917.

SUMARIO DE LA OPINIÓN EMITIDA POR EL JUEZ PRESIDENTE SR. HERNÁNDEZ CON LA CUAL ESTÁ CONFORME EL JUEZ ASOCIADO SR. ALDREY.

NULIDAD DE TÍTULOS—BUENA FE—POSEEDOR DE BUENA FE.—Es poseedor de buena fe el que cree que adquirió la cosa de quien era dueño de ella y podía transmitir su dominio, o el que ignora que en su título o modo de adquirir existiera vicio que lo invalidara. La buena fe es compatible con un título, afectado por un vicio que lo invalide, siempre que se ignore la existencia del vicio por el poseedor o éste crea que no existe.

ID.—JUSTO TÍTULO—PRESCRIPCIÓN ORDINARIA—POSESIÓN EN CONCEPTO DE DUEÑO.—Para que el título sea justo no es necesario que de hecho transfiera el dominio o derecho real sino que sea suficiente para transferirlos, aunque adolezca de un vicio que lo invalide. Por lo que un título hábil para transferir el dominio, aunque no lo transmita de hecho y de derecho al adquirente por adolecer de un vicio que lo invalida, puede servir para adquirir por medio de la prescripción ordinaria el dominio siempre que concurran los requisitos de buena fe y tiempo de posesión prevenido por la ley, siendo además la posesión en concepto de dueño, pública, pacífica y no interrumpida, según el artículo 1842 del Código Civil Revisado.

ID.—POSESIÓN DE BUENA FE—TÍTULO SUFICIENTE.—Según el artículo 366 del Código Civil para poseer de buena fe no es necesario tener un título perfecto

sino que basta un título que seá suficiente en sus términos y condiciones para transferir la propiedad y sus defectos sean ignorados por el poseedor. Esos defectos deben ser de los que invalidan el título.

ID.—REIVINDICACIÓN—PRESCRIPCIÓN ORDINARIA—TÍTULO JUSTO, VERDADERO Y VÁLIDO.—Aplicando a este caso la doctrina legal expuesta, *se resolvió:* que la sociedad demandada ha adquirido por prescripción ordinaria los condominios que los demandantes tratan de reivindicar, porque la escritura de 18 de marzo de 1904, por la que la madre, en ejercicio de la patria potestad sobre sus menores hijos los demandantes, y con autorización del Tribunal de Distrito de San Juan, que no era el de su domicilio, concedida en 28 de abril de 1902, vendió a la sociedad demandada los condominios expresados, es un título justo, verdadero y válido para la prescripción: *justo,* por ser de comproventa, bastante para transferir el dominio; *verdadero,* porque no ha sido argüido de falso; y *válido* por ser perfecto en sus requisitos externos y aun en las condiciones internas que afectan a su vida y existencia, con arreglo al artículo 1226 del Código Civil, pues hubo materia del contrato, consentimiento y causa del mismo.

ID.—AUTORIZACIÓN JUDICIAL—REIVINDICACIÓN—PRESCRIPCIÓN.—La falta de autorización por corte competente para la venta de bienes de menores, afecta la modalidad del consentimiento pero no a su esencia; no lo hace inexistente sino nulo, y de ahí la nulidad del título, que como nulo apareja la acción reivindicatoria, pero que es suficiente para la prescripción.

ID.—JURISDICCIÓN — COMPETENCIA — AUTORIZACIÓN JUDICIAL — BIENES DE MENORES.—Con sujeción a los principios legales imperantes en 1902, el Tribunal de Distrito de San Juan tenía jurisdicción *in radice* para conocer de asuntos de autorización para la enajenación o gravamen de bienes de menores, pero era incompetente para otorgarla si los bienes radicaban en otro distrito. De ahí que la nulidad en el presente caso no se deriva de la falta de jurisdicción, sino de la falta de competencia en el tribunal que la otorgó, que son conceptos distintos, por más que frecuentemente se emplean como sinónimos.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José y Manuel Tous Soto.*

Abogados de los apelados: *Sres. Bosch & Soto* e *Isidoro Soto Nussa.*

Opinión emitida por el Juez Presidente Sr. Hernández, con la cual está conforme el Juez Asociado Sr. Aldrey.

Se trata de recurso de apelación interpuesto por la parte demandante contra sentencia que en el caso arriba expresado pronunció la Corte de Distrito de San Juan, Sección 1ª., en 22 de diciembre de 1915 desestimando la demanda sin especial condenación de costas.

En dicha demanda enmendada, siendo la original de fecha

5 de junio de 1914, se pide que se declare nula en cuanto a los condominios correspondientes a los demandantes la adjudica- ción en pago de ciertas fincas rústicas que se describen en la demanda bajo los números 1, 2, 3, 4, 5, 6 y 7, declarándose que a cada uno de los demandantes le corresponde en cada una de las referidas fincas un condominio de 2/18 partes en plena propiedad y otro condominio de 1/8 parte en nuda propiedad en un condominio de 2/18 partes y condenando a la sociedad demandada a reconocer dichos condominios y a reintegrarlos a los actores con sus frutos y rentas percibidos y podidos per- cibir, de los cuales deberá rendir cuenta detallada y justificada en el término que se le fije, con costas, desembolsos y honora- rios de abogado a cargo de la demandada.

Los hechos determinantes de la acción, que la corte *a quo* estima probados, son los siguientes:

(*a*) A cada uno de los demandantes correspondía en cada una de las fincas que se describen en la demanda, un condo- minio de 1/9 parte de la mitad, o sean 2/18 partes de la tota- lidad en plena propiedad y otro condominio de 1/8 parte de 2/18 partes en nuda propiedad.

(*b*) Doña Rosa Torrens, en representación de los deman- dantes menores de edad entonces, en el ejercicio de su patria potestad vendió a la sociedad J. Ochoa y Hermano por escri- tura de 18 de marzo de 1904, los condominios correspondien- tes en plena propiedad a dichos menores, como herederos de su padre don Pedro Martorell, en los referidos inmuebles.

(*c*) Doña Rosa Torrens verificó la referida venta en vir- tud de autorización que le fué concedida por la Corte de Dis- trito de San Juan por resolución de 28 de abril de 1902 te- niendo en esa fecha así como al tiempo de otorgarse la es- critura, la expresada señora y sus hijos menores bajo su pa- tria potestad, su residencia, domicilio y vecindad en el muni- cipio de Ciales.

(*d*) La sociedad demandada se encuentra actualmente en posesión de los inmuebles descritos en la demanda y ha estado

en dicha posesión desde que se otorgó la escritura de venta, percibiendo los frutos y rentas de los mismos.

(e) La sociedad J. Ochoa y Hermano sostenía corresdencia con Doña Rosa Torrens y con la Sucesión de don Pedro Martorell, dirigida al pueblo de su residencia, o sea Ciales, y estaba enterada de que Ciales era la residencia habitual de la Señora Torrens y de sus hijos al tiempo de concederse la autorización judicial.

La parte demandada alegó como defensa especial que la acción ejercitada había prescrito de acuerdo con el artículo 1858 del Código Civil Revisado y la corte por ese fundamento desestimó la demanda en su sentencia de 22 de diciembre de 1915.

Sostiene la parte apelante como fundamento del recurso que la corte inferior erró al declarar que los demandados J. Ochoa y Hermano adquirieron por prescripción adquisitiva ordinaria mediante la posesión durante diez años, con buena fe y justo título, las fincas objeto de esta acción reivindicatoria.

Los artículos del Código Civil que regulan la cuestión envuelta en el presente caso, son los 1841, 1851, 1853, 1854, 1855 y 1858, que transcribimos a continuación:

"Artículo 1841.—Para la prescripción ordinaria del dominio y demás derechos reales se necesita poseer las cosas con buena fe y justo título por el tiempo determinado en la ley.

"Artículo 1851.—La buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueño de ella, y podía transmitir su dominio.

"Artículo 1853.—Entiéndese por justo título el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate.

"Artículo 1854.—El título para la prescripción ha de ser verdadero y válido.

"Artículo 1855.—El justo título debe probarse; no se presume nunca.

"Artículo 1858.—El dominio y demás derechos reales sobre bienes inmuebles se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título."

Como se ve, el Código Civil en su artículo 1858 exige para la adquisición por prescripción del dominio y demás derechos reales sobre bienes inmuebles, buena fe, justo título y posesión por diez años entre presentes y veinte entre ausentes.

En el artículo 1851 define el concepto de la buena fe, el cual consiste en la creencia de que la persona de quien recibió la cosa el poseedor, era dueño de ella y podía transmitir su dominio. Para la buena fe basta la creencia indicada y no es necesario el hecho real y positivo de que la persona de quien el poseedor recibió la cosa fuera en efecto dueño de ella y pudiera transmitir su dominio. Ese concepto de la buena fe concuerda con el artículo 436 aplicable a la prescripción, lo mismo que el 437, por precepto terminante del 1852, cuyo artículo 436 establece que se reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide, reputándose poseedor de mala fe al que se halla en el caso contrario. Y según el artículo 437 la buena fe se presume siempre y al que afirma la mala fe de un poseedor corresponde la prueba. De modo que es poseedor de buena fe el que cree que adquirió la cosa de quien era dueño de ella y podía transmitir su dominio, o el que ignora que en su título o modo de adquirir existiera vicio que lo invalidara. Así es que la buena fe es compatible con un título, afectado por un vicio que lo invalide, siempre que se ignore la existencia del vicio por el poseedor o éste crea que no existe.

Por lo que atañe al justo título, por modo expreso dice el artículo 1853 que se entiende por tal el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate. Para que el título sea justo no es necesario que de hecho transfiera el dominio o derecho real sino que sea suficiente para transferirlos, *aunque adolezca de un vicio que lo invalide.* Y tiene que ser así, porque si bajo el nombre de justo título que la ley exige para la prescripción, viniera comprendido solamente un título adornado de todos los requisitos así internos como externos necesarios para la transmisión real

y positiva del dominio, abundaría la prescripción como medio adquisitivo del dominio.

"Esto no solamente es lo justo sino que es lo legal," como ya dijimos al resolver el caso de *Teillard* v. *Teillard,* 18 D. P. R. 568, "so pena de que queden sin efecto las disposiciones del Código Civil referentes a que por el transcurso de diez años entre presentes y de veinte entre ausentes, se adquiera por prescripción el dominio de las cosas inmuebles poseídas con buena fe y justo título. Si la posesión transmitida mediante una venta, aun así necesitara treinta años para prescribir, holgarían esos preceptos del código y también las muchas decisiones de esta Corte Suprema, dictadas de conformidad con los citados preceptos al resolver apelaciones sobre informaciones de dominio, que están contenidas en mayor número en los tomos 3, 5 y 6 de nuestras decisiones."

Y agregamos entonces, invocando la sentencia del Tribunal Supremo de España de 25 de octubre de 1881, que "si el título nulo no puede dejar de serlo convirtiéndose en válido, las leyes fundadas en razón de conveniencia pública han dado en algunos casos a la posesión una fuerza irrevocable, no por virtud de su causa originaria, sino por el respeto debido a un estado consagrado por el transcurso del tiempo."

La doctrina expuesta fué ratificada posteriormente en los casos de *Picard* v. *de León,* 22 D. P. R. 592, *Arroyo et al.* v. *Bruno et al.,* 23 D. P. R. 814, y en el no reportado aún de *Maldonado* v. *Ramos et al.,* (24 D. P. R. 297.)

El Tribunal Supremo de España, en sentencia de 2 de octubre de 1908, al resolver recurso de casación en que se citaban como infringidos los artículos 1950, 1952 y 1953 del Código Civil Español (1851, 1853 y 1854 del Revisado) por haberse estimado bastante para la prescripción ordinaria una escritura de venta de una concesión por un viudo que la había adquirido siendo casado, sosteniéndose que dicho título era nulo e ineficaz para la prescripción, desestimó el recurso por los siguientes motivos: "1ª. porque la escritura de 16 de julio de 1891 es un título justo y perfecto en sus condiciones ex-

ternas de los establecidos en la ley, para poder transmitir el
dominio, y reúne los requisitos exigidos en los artículos 1952
y 1953 del Código Civil, no siendo dable, legalmente, confundir
la nulidad que para los efectos de la prescripción pueda afec-
tar a los títulos, por la falta de alguno de aquellos que, según
su carácter respectivo, obsten a su estimación en juicio, con
la derivada de la naturaleza de los actos realizados y de la
capacidad de las personas; 2°. porque siendo presumible siem-
pre la buena fe y consistiendo ésta en la *creencia* de que la
persona de quien se recibió la cosa era dueño de ella y podía
transmitir su dominio según el artículo 1950, no puede ne-
garse esta condición a las compañías demandadas por la mera
particularidad de que el Conde de Locatelli hubiese otorgado
la escritura, consignando en ella su estado de viudo, puesto
que aparecía como único concesionario y tiene en este concepto
el carácter de dueño, aparte de las inconveniencias familiares
producidas por la defunción de su esposa ocurrida mes y me-
dio antes del otorgamiento de aquélla, que pudieron haber pa-
sado inadvertidas para los que intervinieron en la constitu-
ción de la sociedad, y porque para la estimación de una mera
creencia a los efectos de la buena fe *no hay que aplicar los*
*principios estrictos de derecho como si se tratara de juzgar*
*acerca de la validez del acto   *   *   *.''*

Jurisprudencia Civil, tomo 112, página 39.

El mismo tribunal en sentencia posterior de 30 de noviem-
bre de 1910, establece ''que aún en el supuesto de que una es-
critura no hubiera podido transmitir al comprador la propie-
dad de los bienes reclamados por la nulidad del título que el
vendedor ostentara, si dicha escritura, además de reunir los
requisitos externos que la ley requiere constituye por su na-
turaleza un título traslativo de dominio, es manifiesto que se
llenen en ella las condiciones establecidas en los artículos 1952
y 1953 del Código Civil (1853 y 1854 del Revisado), como así
lo tiene proclamado esta Sala en casos análogos, porque de
exigirse que el título invocado transmitiera de hecho y de
derecho el dominio de la cosa al comprador, no tendría para

qué acudir éste a la prescripción, y este modo de adquirir. por lo que respecta a la prescripción ordinaria, sería superfluo y habría que borrarlo por innecesario e inútil de entre todos los admitidos por nuestra legislación positiva." Jurisprudencia Civil, tomo 119, página 486.

En vista de los preceptos legales citados y de la jurisprudencia ya establecida por esta Corte Suprema conforme con la del Tribunal Supremo de España, llegamos a la conclusión de que un título hábil para transferir el dominio, aunque no lo transmita de hecho y de derecho al adquirente por adolecer de un vicio que lo invalida, puede servir para adquirir por medio de la prescripción ordinaria el dominio siempre que concurran los requisitos de buena fe y tiempo de posesión prevenido por la ley, siendo además la posesión en concepto de dueño, pública, pacífica y no interrumpida, según el artículo 1842 del Código Civil Revisado.

Nada arguye contra la anterior conclusión el precepto del artículo 1854, según el cual el título para la prescripción ha de ser verdadero y válido. Al concepto de verdadero en sentido gramatical y legal es opuesto el de falso. Al concepto de válido no podemos dar una significación que borre de nuestro Código el modo de adquirir por prescripción ordinaria, como sucedería si entendiéramos por título válido aquel que llenase todas las condiciones internas y externas exigidas por la ley. Título válido será el que reúna los requisitos que den vida al título y demuestran su existencia prescindiendo de la naturaleza de los actos realizados y de la capacidad de las personas, si nos atenemos a las sentencias del Tribunal Supremo de España de 2 de octubre de 1907 y 30 de noviembre de 1910.

Y viene a confirmar nuestra teoría el artículo 366 que dice así:

"Artículo 366.—Es poseedor de buena fe el que posee como propietario por virtud de un título suficiente en sus términos y condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor. La posesión de buena fe cesa desde el momento en que

el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que estableciere el propietario de la cosa para reivindicarla.''

De modo que según el artículo transcrito, para poseer de buena fe no es necesario tener un título perfecto sino que basta un título que sea suficiente en sus términos y condiciones para transferir la propiedad y sus defectos sean ignorados por el poseedor.   Esos defectos deben ser de los que invalidan el título, pues de otro modo holgaría la prescripción como hemos dicho antes.

Haciendo aplicación al caso de autos de la doctrina legal que dejamos expuesta, forzoso se hace concluir que la sociedad demandada ha adquirido por prescripción ordinaria los condominios que los demandantes tratan de reivindicar. La escritura de 18 de marzo de 1904 por la que Rosa Torrens en ejercicio de la patria potestad sobre sus menores hijos los demandantes, y con autorización de la Corte de Distrito de San Juan concedida en 28 de abril de 1902, vendió a la sociedad J. Ochoa y Hermano los condominios expresados, es un título justo, verdadero y válido para la prescripción: justo, por ser de compraventa bastante para transferir el dominio; verdadero, pues no ha sido argüido de falso; y válido por ser perfecto en sus requisitos externos y aun en las condiciones internas que afectan a su vida y existencia, con arreglo al artículo 1228 del Código Civil, pues hubo materia del contrato, consistente en los condominios que se describen en la demanda, consentimiento que manifiestan J. Ochoa y Hermano por medio de su gestor don Severo Ochoa y los menores por medio de su representante legal, o sea su madre Rosa Torrens que ejercía patria potestad sobre los mismos, y causa del contrato originada por las prestaciones de ambas partes, a saber, traspaso de los condominios y pago de su precio.   La falta de autorización por corte competente, afecta a la modalidad del consentimiento, pero no a su esencia; no lo hace inexistente sino nulo, y de ahí la nulidad del título, que como nulo apareja la acción reivindicatoria, pero que es suficiente para la prescripción alegada.   La posesión por parte de J. Ochoa

y Hermano ha sido de buena fe, pues ésta se presume siempre
y las pruebas no demuestran que supiera que en su título o
modo de adquirir existía vicio que lo invalidara.

El conocimiento que tuvieran J. Ochoa y Hermano de que
Rosa Torrens y sus hijos eran vecinos de Ciales, pueblo co-
rrespondiente al distrito judicial de Arecibo, y no al de San
Juan, dadas todas las circunstancias concurrentes del caso, no
destruye la presunción legal de que dicha sociedad haya sido
poseedora de buena fe. Y que dicha posesión ha sido en con-
cepto de dueño, pública, pacífica y no interrumpida, según
exige el artículo 1842 del Código Civil, y por más de diez años
entre presentes, no es materia a discutir en el presente re-
curso.

La resolución de 28 de abril de 1902 por la que la Corte de
Distrito de San Juan concedió a Rosa Torrens autorización
para la venta de las participaciones de condominio sobre bie-
nes inmuebles correspondientes a sus menores hijos, dice así:

"Resultando que doña Rosa Torrens Risech ha solicitado autori-
zación para vender las participaciones proindivisas que sus menores
hijos sujetos a su patria potestad y llamados Doña Teresa, Don An-
tonio, Don Luis, Don Miguel y Don Gerardo Martorell y Torrens
tienen en las fincas rústicas siguientes: * * * (las fincas que se
describen en la demanda). Resultando que por los tres testigos sin
tacha a los que certifica conocer el secretario se ha justificado con
citación del ministerio público la necesidad y la utilidad en cuanto
a los dichos menores en la indicada venta siendo el Sr. Fiscal de pare-
cer que se conceda la autorización pedida. Considerando lo que dis-
ponen los artículos 164 del Código Civil, 2010 y siguientes, y 2029
de la Ley de Enjuiciamiento Civil, se autoriza a doña Rosa Torrens
y Risech en cuanto a sus indicados hijos menores, para que venda
las participaciones que en las mencionadas fincas tienen aquéllos.
Lo acordaron los Sres. del Tribunal y firman todos de que certifico:
Juan R. Ramos. Juan Morera Martínez. José R. F. Savage. Ante
mí, Ramón Falcón."

Investida con dicha autorización, de cuya eficacia legal no
dudaron ni Rosa Torrens ni J. Ochoa y Hermano, la primera
en representación de los menores vendió a J. Ochoa y Her-

mano por escritura de 18 de marzo de 1904 ante el notario Don Herminio Díaz Navarro los condominios de referencia.

La escritura de venta fué inscrita en el registro de la propiedad de Arecibo.

Con razón la ilustrada representación de la parte apelada, teniendo en cuenta los antecedentes expuestos, formula la siguiente pregunta: "Si el abogado que dirigió a doña Rosa Torrens y redactó la solicitud creyó proceder correcta y legalmente presentándola al tribunal de distrito de San Juan, si el Fiscal emitió un dictamen favorable, si los tres jueces que conocieron de dicha solicitud dictaron una resolución de acuerdo con lo solicitado, si el notario que redactó la escritura de venta y teniendo el documento judicial a la vista no le opuso reparo, si el registrador que hubo de inscribir el título de dominio, no observó ningún vicio que lo invalidara, siendo todos ellos peritos en el conocimiento del derecho y los llamados por la ley a calificar la validez o invalidez de un documento, ¿con qué razón ni con qué derecho se pretende ahora que J. Ochoa y Hermano sea responsable de los vicios o errores cometidos por un tercero y completamente ajenos e independientes de su voluntad? Si los jurisperitos no vieron ni notaron defecto alguno en la autorización judicial concedida a Doña Rosa Torrens, ¿cómo se quiere que los viera y notara J. Ochoa y Hermano, profano en la técnica jurídica? No era J. Ochoa y Hermano el llamado a resolver un problema legal de tan difícil solución que exige un análisis profundo de los preceptos legales envueltos en la ameritada autorización, como ha venido a demostrarlo después esta misma corte al rendir su decisión en este punto que acusa un estudio detenido, arduo y complejo de la materia."

Ciertamente que una corte sin jurisdicción no puede dar autoridad a nadie para enajenar bienes de menores. Pero opinamos que atendida la fecha, 28 de abril de 1902, en que la Corte de Distrito de San Juan autorizó a Rosa Torrens para la enajenación, no puede afirmarse en absoluto que dicha corte careciera de jurisdicción para otorgar la autori-

zación por más que no fuera la competente para ello, sino la Corte de Distrito de Arecibo.

Jurisdicción en derecho español, que es el que debe regular el presente caso, según el concepto que de ella nos da el ilustrado comentarista Manresa y Navarro en sus comentarios a la Ley de Enjuiciamiento Civil española, es la potestad de que se hallan revestidos los jueces para administrar justicia; y competencia es la facultad que tienen para conocer de ciertos negocios, ya por la naturaleza misma de las cosas o bien por razón de las personas: la primera es el género y la segunda la especie. La jurisdicción emana siempre de la ley directa e inmediatamente; nadie puede ejercerla sin que la ley le haya concedido este poder; sólo tienen jurisdicción, sólo pueden administrar justicia las personas a quienes les ha sido concedido este poder con arreglo a la ley; mas, la competencia del juez para conocer de un negocio, aunque se derive también de la ley, unas veces trae de ella su origen directa, inmediata y exclusivamente, y otras lo tiene de la voluntad de las partes. El primer caso forma la regla general, y el segundo las excepciones. *Garcés* v. *Franceschi,* 1 S. P. R. 282, *Bayron et al.* v. *García et al.,* 17 D. P. R. 538.

Bajo la anterior teoría, la Ley de Enjuiciamiento Civil que comenzó a regir en 1°. de enero de 1886, no modificada en la materia de que se trata por la Orden General No. 118 de agosto 15, 1899, y que regía en la fecha de la autorización, establece en su artículo 53 que para que los jueces y tribunales tengan competencia se requiere: 1°. que el conocimiento del pleito o de los actos en que intervengan esté atribuído por la ley a la autoridad que ejerzan; 2°. que les corresponda el conocimiento del pleito o acción con preferencia a los demás jueces o tribunales de su mismo grado. Y en su artículo 56 ordena que será juez competente para conocer de los pleitos a que dé origen el ejercicio de las acciones de toda clase, aquel a quien los litigantes se hubieren sometido expresa o tácitamente, pero que esa sumisión sólo podrá hacerse al juez que ejerza jurisdicción ordinaria y que la tenga para conocer de

la misma clase de negocios y en el mismo grado.   El artículo 63 al fijar varias reglas de competencia enumera bajo el número 23 la que en las autorizaciones para la venta de bienes de menores o incapacitados, será juez competente el del lugar en que los bienes se hallaren, o el del domicilio de aquellos a quienes pertenecieren.

Era doctrina corriente sostenida por sentencias del Tribunal Supremo de España de 22 de julio y 30 de septiembre de 1875, 6 de octubre de 1876 y 2 de junio de 1877, y por resoluciones de la Dirección General de los Registros de 22 de enero de 1886 y 9 de mayo de 1889, que tanto en asuntos de jurisdicción contenciosa como en los de jurisdicción voluntaria podía hacerse la sumisión al juez que ejerciera jurisdicción ordinaria y que la tuviera para conocer de la misma clase de negocios y en el mismo grado.   Esa misma doctrina fué aceptada por esta Corte Suprema al resolver el caso de *Solá* v. *El Registrador,* 8 D. P. R. 213, aunque fué desautorizada posteriormente en los casos de *Nazario* v. *El Registrador,* 16 D. P. R. 668 y *Esterás* v. *Arroyo,* 16 D. P. R. 725.

Pero como la cuestión legal de si la jurisprudencia a que nos referimos sería aplicable a la autorización para enajenar y gravar bienes de menores después que comenzó a regir en esta isla en 1°. de enero de 1890 el anterior Código Civil, no había sido considerada y decidida por el Tribunal Supremo de España ni por la Dirección General de los Registros, pues fué levantada por primera vez que sepamos en el presente pleito y en otro análogo entre las mismas partes, la resolvimos en el sentido de que desde que comenzó a regir el Código Civil de 1890 sólo el juez del domicilio de los menores tenía competencia para conceder la autorización para enajenar o gravar sus bienes raíces, sin que en ese caso pudiera darse la competencia por sumisión.   *Martorell et al.* v. *J. Ochoa & Hermano et al.,* 23 D. P. R. 31 y 43.

Al apreciar esta corte en sus decisiones *supra* citadas la nulidad de la autorización concedida a Rosa Torrens no prejuzgó la excepción de prescripción que hoy se debate por más

que aquella nulidad hubiese aparejado la de la escritura de 18 de marzo de 1904 y trajera como consecuencia la reivindicación solicitada a no mediar la prescripción.

La Corte de Distrito de San Juan, con sujeción a los principios legales entonces imperantes, tenía jurisdicción *in radice* para conocer de la clase de asuntos como el de la autorización para la enajenación o gravamen de bienes de menores, pero era incompetente para otorgar la autorización concedida en el presente caso por ser de competencia exclusiva de la corte de distrito en que los bienes radican por precepto imperativo de la ley. Si la autorización se hubiera concedido por esta Corte Suprema o alguno de sus jueces, o por una corte municipal o de paz, o por cualquier funcionario o particular no facultado para administrar justicia, la autorización entonces hubiera sido nula por falta de jurisdicción y bien hubiera podido calificarse de inexistente. Su nulidad no se deriva de falta de jurisdicción sino de falta de competencia por la corte que la otorgó. Jurisdicción y competencia son conceptos distintos, por más que frecuentemente se emplean como sinónimos.

El caso de *Longpré* v. *Díaz,* 237 U. S. 512, no es igual al presente en que se concedió por una corte de distrito autorización para la venta, la cual tenía la presunción de válida hasta que fué puesta en tela de juicio por la demanda de 5 de junio de 1914, cuando ya se habían llenado todos los requisitos que la ley exige para la prescripción ordinaria adquisitiva del dominio entre presentes.

Hacemos constar que para llegar a la conclusión a que llegamos hemos procedido influídos especialmente por las leyes, jurisprudencia y principios legales dominantes en la fecha en que la Corte de Distrito de San Juan dictó su resolución de 28 de abril de 1902, cuando no regían ni el Código de Enjuiciamiento Civil de 1904 ni la Ley de Procedimientos Legales Especiales de 1905.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Hutchison, habiendo firmado este último ''conforme con la sentencia.''

Jueces disidentes: Sres. Wolf y del Toro.

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. HUTCHISON.

Desde el 1º. de enero al 31 de julio de 1915, esta corte resolvió unos 380 asuntos.   Entre éstos había una apelación interpuesta contra la sentencia de una corte de distrito desestimando este pleito después de haber sostenido la excepción previa a la demanda de falta de hechos suficientes determinantes de una causa de acción.   Aquella sentencia fué revocada en julio 23 de 1915, 23 D. P. R. 31.

El tercer señalamiento de error apuntado en la apelación especificaba ''falta de aplicación de la sentencia de esta Corte Suprema en el caso de *Esterás* v. *Arroyo,* 16 D. P. R. 725, y su antecedente de la Corte Suprema de los Estados Unidos en el caso *Garzot* v. *Rubio,* 209 U. S., 303.''

Esta corte se encontró en la alternativa de repudiar la doctrina del caso de *Esterás* v. *Arroyo* o revocar la decisión de la corte de distrito por la autoridad de la doctrina sentada en dicho caso o por cualquier otro fundamento.   La conclusión a que se llegó en el caso de *Esterás* v. *Arroyo* se supuso haber sido la consecuencia necesaria de la doctrina sentada en el caso de *Garzot* v. *Rubio,* y a primera vista la parte pertinente de la opinión de la Corte Suprema de los Estados Unidos en ese caso, si se lee sin analizarla o sin referencia al contexto de la misma, aparecería como que apoya semejante inferencia.

El resultado en el caso entonces ante esta corte parecía inevitable, y los fundamentos sobre los que iba a fundarse la decisión llegaron a ser mayormente una cuestión de elección entre una línea de selección algo restringida y otra poco satisfactoria.   Así no llegó a recibir debida consideración aquél caso en sus méritos.   Las circunstancias atenuantes, o de otro modo, que contribuyeron a producir este resul-

tado no es preciso enumerarlas. Un error ocasional es ine-
vitable y cuando llega a descubrirse, debiera corregirse en-
seguida. Con dos males nunca se forma un bien.

En la segunda apelación se confirmó la sentencia de la
corte de distrito mediante una corte dividida. La opinión
emitida por el Juez Presidente evidencia el criterio de dos
de los tres miembros que constituían la mayoría, y los fun-
damentos sobre los que los otros dos miembros disintieron
aparecen asimismo de la opinión disidente emitida por el
Juez Asociado Sr. Wolf. El suscribiente, que concurrió por
estar conforme con la sentencia, no señaló razón alguna a
aquella fecha por su actitud. Se ha concedido una moción
de reconsideración y el propósito de esta opinión es dar a
las partes una idea de las consideraciones sobre las que basó
su voto decisivo.

El caso de *Esterás et al* v. *Arroyo,* sin otro fundamento
que una mera referencia a los artículos 19 y 23 de la Ley de
Procedimientos Legales Especiales y al caso de *Garzot* v. *Ru-
bio, supra,* revoca de plano la doctrina sentada en el caso de
*Solá* v. *El Registrador,* 8 D. P. R. 213, que por cinco años per-
maneció sin que fuese atacada como el pronunciamiento so-
lemne de este tribunal.

El caso últimamente mencionado está profundamente
arraigado en el fértil terreno de la jurisprudencia española y
las disposiciones estatutorias sobre las que se basa la opinión
emitida en el mismo se hallan tan firmemente enclavadas en
nuestro actual Código de Enjuiciamiento Civil, título V,
—"Del lugar para la celebración de los juicios en asuntos
civiles,"— como lo estaban en el código español. Es de pre-
sumirse que la legislatura conocía la ley y el estado de la
misma al tiempo de aprobarse los artículos 76 y 77 del ac-
tual Código y al tomarse de la Ley de Enjuiciamiento Civil
Española con ellos adoptó la práctica establecida y sancio-
nada por la interpretación de la ley anterior dada por los
tribunales españoles.

Que en este caso particular la Asamblea Legislativa en-

tendió la materia que tenía entre manos, es evidente por sí solo, pues a menos que la práctica española establecida ·con arreglo a estos artículos se haya traído junto con ellos al nuevo código, los tales artículos nada añaden a los otros que se contienen en el mismo título, copiados del Código de Idaho, y al incluirlos así nuestros legisladores hicieron una cosa vana e inútil. Y no tenemos razón alguna para presumir que el hecho de agrupar estos artículos con otras disposiciones apropiadas que regulan el lugar para la celebración de los juicios fuese una mera circunstancia fortuita. Por el contrario, y aparte de cualquier presunción de ley, sencillamente era lo más natural, propio y lógico que se hiciese. Traduciéndose lo más fielmente posible en términos del derecho americano el principio envuelto no es materia de jurisdicción en el sentido corriente del vocablo sino del moderno concepto de competencia municipal (*municipal venue*). *Bayrón* v. *García,* 17 D. P. R. 538, 544, 545; *Gómez* v. *Toro,* 23 D. P. R. 642, 643; 40 Cyc., pp. 23-43.

A pesar de la mucha confusión que ha habido en el empleo, con poca fortuna o de otro modo al principio, de palabras que han llegado a tener una significación fija y determinada en cada lengua, que varían hasta cierto punto su equivalente etimológico en la otra, y a pesar de la gran dificultad que resulta de la mutua traducción a la terminología técnica legal de ambos sistemas de jurisprudencia, existe en ambos sistemas la diferencia fundamental que hay entre jurisdicción en su verdadero sentido y el lugar apropiado para la celebración de los juicios en relación a las cortes locales de jurisdicción coordinada entre sí por cualquier nombre con que se le conozca o designe; y debe prevalecer al resolverse en definitiva el presente caso.

Las dos opiniones en el mismo caso no pueden ser reconciliadas. Lo que se dijo en la primera apelación no es preciso repetirlo aquí. Aquella opinión, cuando menos en su versión española, habla por sí misma. Si la doctrina entonces enunciada es sana, el artículo 164 del Código Civil

le confiere jurisdicción exclusiva al distrito del domicilio, y no puede haber cuestión alguna de competencia (*venue*), ni de procedimiento o justo título, o buena fe o de prescripción ordinaria. El decreto de cualquier otra corte es absolutamente nulo y no puede dar ningún principio de título (*color of title*). Pero esa decisión fué radicalmente errónea, porque se fundaba sobre el tácito supuesto de que por razón de la doctrina sentada en el caso de Garzot esta corte no tenía otra alternativa que la de seguir por lógica conclusión la doctrina ya enunciada en el caso de *Esterás et al.,* v. *Arroyo.* El hecho de omitir en la opinión toda referencia a estos casos sencillamente indica lo refractaria que estaba la corte a seguir los mismos siempre que pudiera encontrarse algún fundamento más recomendable.

Sin embargo, el tercer señalamiento de error, revela la teoría de la acción y de la apelación. La cuestión de las fechas carece de importancia.

La hipótesis de una derogación tácita gira sobre la misma proposición dudosa de que el artículo 164 del Código Civil sienta un principio absoluto e inflexible de derecho sustantivo no sólo en cuanto a la primaria cuestión de la autorización judicial sino también respecto de la secundaria consideración sobre qué distrito particular debe conceder tales remedios. La mera exposición de la proposición no establece lo sano de la misma. No se favorecen las derogaciones tácitas. La premisa excluye la idea de una regla adjetiva, y, en tanto cuanto se da por sentada sin aparente justificación alguna, simplemente constituye una *petitio principii*.

La resolución del juez de distrito al sostener la excepción previa y la sentencia de la corte inferior desestimando la demanda, debieron haberse confirmado en la primera apelación. No habiéndose hecho ésto, debió haberse libremente confesado el error cuando volvió el caso a esta corte por segunda vez. No hay términos medios. La tradicional "ley del caso" jamás puede justificar el deliberado sacrificio de una cumplida y sustancial justicia.

La sentencia de esta corte en la primera apelación no era una sentencia definitiva. · *Great Western Tel. Co.* v. *Burnham,* 182 U. S. 339.

"En defecto de precepto positivo, la frase 'ley del caso' cuando se aplica a los efectos de órdenes anteriores sobre la acción posterior de la corte que las dictara en el mismo caso, meramente expresa la práctica de los tribunales en rehusar por lo general volver a abrir a discusión lo que ha sido decidido, y no una limitación a sus facultades."

*Messenger* v. *Anderson,* 225 U. S. 346, y casos citados.

Si es que algo existe en el caso de *Garzot* v. *Rubio* que pueda interpretarse en apoyo de la conclusión a que se llegó en el caso de Esterás, es el empleo de la palabra "exclusiva" en conexión no solo con el contexto inmediato sino con lo que le precede y le sigue a los dos párrafos de la opinión en que ocurre la expresión, y que rezan como sigue:

"Por virtud de la Ley de Enjuiciamiento Civil de Puerto Rico (Artículo 63, párrafo 5), la facultad de administrar los bienes de una sucesión, tanto testamentaria como intestada, radica en el juez del último domicilio del causante. Que facultad así conferida es exclusiva se demuestra por el texto del propio artículo y por la amplia concesión de facultades que abarcan las disposiciones de la ley que le siguen, respecto de la ultimación de las sucesiones tanto testamentarias como intestadas. Que en él se abarca la autoridad para admitir y fallar toda clase de acciones, ora reales o personales, necesariamente incidentales al cumplimiento de las facultades otorgadas sobre los bienes hereditarios, se demuestra por las disposiciones del Código de Louisiana en cuanto a la sociedad de gananciales y la analogía que se obtiene entre las disposiciones del Código de Práctica de Louisiana y la Ley de Enjuiciamiento Civil de Puerto Rico, concerniente a la facultad del juez o corte encargada de la administración de fondos hereditarios, ora sean testamentarios o intestados, especialmente cuando se refiere a la liquidación de la sociedad de gananciales, que ha existido entre marido y mujer, hace pertinente la observación de la Corte Suprema de Louisiana en el caso de Lawson et ux v. Ripley, 17 Louisiana, 238, 248, en el que se dijo:

'La sucesión del marido, está por lo tanto tan relacionada con la sociedad de gananciales que llega a formar junto con ella, al tiempo de su fallecimiento, una sola masa llamada su caudal here

ditario (*estate*), el que no sólo responde del pago de las deudas de
la sociedad de gananciales, sino también de la parte de la esposa o
herederos del resto, caso de que no la hayan renunciado.  La viuda
o sus representantes tienen por consiguiente tal interés en la masa del
caudal o sucesión del marido, respecto de quien no se hace distinción
alguna entre sus bienes privativos y los de la sociedad hasta tanto no
se fije su cuantía líquida o montante que resulte de las adquisicio-
nes y ganancias, que generalmente requiere su asistencia a la forma-
ción del inventario y su concurrencia a todos los procedimientos
contenciosos relativos al mismo que se llevan a cabo.  Todos esos
procedimientos tienen lugar ante la corte de jurisdicción testamen-
taria (*court of probates*) que, con arreglo a derecho, tiene exclusiva
jurisdicción sobre todas las cuestiones relacionadas con el caudal he-
reditario, particularmente en aquellos casos en que se halle el caudal
relicto bajo administración; y no nos parece que puedan llevarse
a cabo procedimientos relacionados con la sociedad de gananciales,
hasta después de liquidado el caudal relicto del marido y pagadas las
deudas de la sociedad, y se haga la división del remanente de las
adquisiciones y ganancias entre los herederos del causante y el cón-
yuge supérstite; y aún así los asuntos del caudal hereditario del
esposo, administrado bajo la dirección e intervención de la corte tes-
tamentaria (*court of probates*) han de ser examinados y a veces
plenamente investigados.''

Volviendo atrás a lo que precede a la parte de la opinión
que acabamos de citar, la Corte Suprema, después de deci-
dir que la Corte Federal en Puerto Rico carecía de autori-
dad para dictar el decreto que dictó, por defecto de partes
necesarias, y que por la misma razón el caso recurrido en
apelación no podía decidirse por sus méritos, procede a con-
siderar la cuestión de si ''en vista de la naturaleza y ca-
rácter del remedio solicitado por el escrito de demanda (*bill*)
el caso debiera ser devuelto para que se celebrase un nuevo
juicio o con instrucciones para que se desestimara el escrito
de demanda 'por falta inherente de jurisdición para ceder
el remedio que se interesa en el escrito de demanda.' ''

Aparecía ''patente de la faz del escrito de demanda que
con él se invocaba la autoridad de la corte para ejercer juris-
dicción puramente testamentaria mediante la administración
y liquidación del caudal de Ríos, el caudal de su hijo, y el de

la madre, y, como un incidente del mismo, para liquidar la sociedad de gananciales que existió entre Ríos y su esposa. En realidad de verdad, tal era exactamente el remedio sustantivo que con el escrito de demanda ultimamente enmendado se perseguía.''

Lo que se decidió, así como el eje sobre el que giró la decisión, se hace inequívocamente claro con el lenguaje perfectamente manifiesto que sigue:

''Como en el escrito de demanda se alega que a la muerte del padre y hermano se iniciaron procedimientos testamentarios respecto de ambos caudales en la corte puertorriqueña adecuada, resulta que no sólo se interesaba en el escrito de demanda la administración ·de· la herencia por conducto de la corte inferior, sino que se interesaba hacerlo así, a pesar de que los caudales relictos estaban aún abiertos en la corte inferior y sometidos a la autoridad y poder de dicha corte. Al establecer el Congreso un gobierno civil para Puerto Rico, teniendo escrupulosamente en cuenta las instituciones y leyes locales, en virtud de la Sección 33 de la Ley de 12· de Abril de 1900, reservóle a las cortes locales, tanto las de jurisdicción original como las de apelación, y reconoció sus facultades y autoridad para intervenir generalmente en todos los asuntos de interés local. Al crearse por la Sección 34 de la misma Ley la Corte de Distrito de los Estados Unidos para Puerto Rico, la jurisdicción y facultades de esa corte, estimamos que por los·mismos términos en que se halla redactada la ley fué moldeada y creada con la intención de que actuase, hasta donde fuese aplicable, de la manera de la jurisdicción ejercitada por las Cortes de Circuito y de Distrito de los Estados Unidos dentro de los diversos Estados de la Unión. Es verdad que la jurisdicción de la Corte de Distrito, que resulta de la ciudadanía, ha ampliado la que se le ha conferido a las Cortes de Circuito y de Distrito de los Estados Unidos dentro de los Estados. Pero en ninguna forma tiende a establecer que el Congreso tenía el propósito, al crear la Corte de Distrito de los Estados Unidos para Puerto Rico, de revestir a esta Corte con una autoridad que no poseen las Cortes · de los Estados Unidos (*Farrel* v. *O'Brien*, 199 U. S. 89), para ejercitar jurisdicción puramente testamentaria, para administrar y liquidar bienes hereditarios prescindiendo de la autoridad de la corte local tal cual fué creada y definida por la ley.''

Esto es tanto la esencia como la razonada exposición de la decisión.

La corte entonces procede a discutir el alcance y extensión de los poderes de que están revestidas las cortes de distrito de Puerto Rico en asuntos de jurisdicción testamentaria y de abintestatos, por presunción excluyéndose los demás tribunales, según aparece de los dos párrafos anteriormente citados en primer término, en cada uno de los cuales se emplea la palabra "exclusiva."

Y otra vez:

"Volviendo a considerar el asunto desde el punto de vista de las alegaciones en cuanto a la nulidad del convenio y de la fraudulenta simulación de las ventas, es evidente que el remedio perseguido en este respecto era meramente un remedio subordinado a la súplica para que se liquidasen y terminasen de arreglar los bienes hereditarios. Puesto que tenemos conocimiento judicial del hecho de que las leyes de Puerto Rico no hacen distinción alguna entre ley y equidad en su sentido técnico, y puesto que con arreglo a dichas leyes una corte encargada de la administración de una herencia lo es tanto de jurisdicción general como especial de testamentarías y abintestatos y tiene plenos poderes sobre toda clase de acciones reales y personales relacionadas con el caudal hereditario, se sigue que la corte local tenía en la naturaleza de las cosas poder para decidir, como un incidente dentro de su autoridad general y especial de testamentarías y abintestatos, se haya cerrado o no el caudal por virtud del convenio, y de aquí decidir la cuestión de si ese convenio era nulo, y tenía también poder y jurisdicción para determinar si permanecían aún como parte del caudal hereditario los bienes que se habían traspasado a la madre por virtud del convenio celebrado, como un incidente al hacerlo así para decidir las cuestiones de fraude y simulación alegadas en el escrito de demanda. Por supuesto, el alcance general de la autoridad que entonces poseía la corte la dotó de la facultad de liquidar y ultimar la sociedad de gananciales que existía entre marido y mujer, puesto que esa liquidación estaba de necesidad envuelta en la ultimación de la herencia. Hablando sobre este último asunto en el caso de *Lawson et ux* v. *Ripley, supra,* la Corte Suprema de Lousiana dijo (p. 249):

"Pero se arguye que con ésto se daría a la corte con jurisdicción sobre abintestatos y testamentarías el derecho a fallar cuestiones de

título.    Ciertamente que las cortes de jurisdicción testamentaria no tienen facultades para entender en controversias de títulos a bienes reales, y de fallar directamente sobre la validez de semejantes títulos; pero como ha dicho esta corte en el caso de *Gill* v. *Phillips et al,* 6 Martin N. S. 298, 'esas cortes poseen todos los poderes necesarios para llevar a efecto su jurisdicción, y cuando en el ejercicio de esa jurisdicción surgen colateralmente tales cuestiones ellas deben, *a necessitate,* decidirlas, puesto que de no poderlo ellas ninguna otra corte podría decidirlas.' Y, 'cualquiera otra interpretación presentaría una especie singular del poder judicial· el poder de decretar una partición, sin la autoridad de examinar los fundamentos sobre los que habría de ordenarse, o la proporción que a cada parte le correspondiese.    Con ello se concedería el fin sin los medios para llegar a él.'    (*Baillo* v. *Wilson,* 5 Martin, N. S. 217.)    Estamos satisfechos de que cuando se levanta una cuestión de título a bienes inmuebles y sobre un esclavo colateralmente en una corte de jurisdicción testamentaria, y se hace necesario el examen de la misma a fin de dar a la corte los medios para llegar a una correcta conclusión en materias de las que tiene jurisdicción, debe conocer del título cuando menos con el propósito de averiguar qué propiedad le pertenece a cada cual de los cónyuges respectivamente o a la sociedad de gananciales.' ''

El verdadero sentido de todo ésto sobre la cuestión entonces sometida a la Corte Suprema se revela en el siguiente párrafo:

"Es verdad que en virtud del artículo 1046 de la Ley de Enjuiciamiento Civil de Puerto Rico las partes interesadas en una herencia aún no ultimada y bajo el dominio de la corte competente tienen facultades para terminar la administración del caudal relicto mediante un convenio entre ellos, y que tal ha podido ser el efecto del convenio celebrado entre las partes envueltas en esta cuestión siempre que el mismo fuese válido.    Pero como en la demanda se alega la nulidad del contrato, y el remedio que se pide se funda en tal concepto, síguese que el remedio que se perseguía con el escrito de demanda solamente podría haberse fundado sobre la hipótesis de que el caudal hereditario no había sido cerrado, y aún estaba sujeto a ser administrado en la corte competente.    Y que esta era la teoría sobre la que se fundaba el escrito de demanda nos lo revela la súplica que se hace a la corte para que ésta nombrase un contador-partidor (master) para liquidar y ultimar los bienes hereditarios."

La suma y sustancia de toda la opinión, en cuanto se refiere a la cuestión ahora sometida a nuestra consideración, es que la corte federal no tiene jurisdicción especial de abintestatos y testamentarías: que en cuanto a la distinción entre dicha corte y las cortes de distrito insulares la jurisdicción especial en materia de abintestatos y testamentarías de las últimas es exclusiva; y que el escrito de demanda en cuestión en efecto perseguía el volver a abrir y concluir en la corte federal una administración judicial que, aunque ostensiblemente ultimada en virtud de un convenio que se alega ser nulo, y que sin embargo, puesto a prueba por la teoría del propio escrito de demanda, nunca había sido plenamente administrado ni permanentemente cerrado en las cortes insulares.

La opinión, bien interpretada, no indica que la cuestión de la jurisdicción que tienen entre sí las respectivas cortes de distrito de la isla estuviese envuelta en forma alguna, o fuese detenidamente considerada por la corte. Es igualmente evidente que en el caso de *Lawson et ux* v. *Ripley,* tampoco había cuestión alguna en cuanto a conflicto de jurisdicción entre cortes locales de jurisdicción testamentaria. Si en el caso de Garzot la Corte Suprema hubiera tenido la intención de decidir la materia de jurisdicción entre una y otra cortes de distrito de la Isla, aplicando directamente en Puerto Rico la doctrina de Louisiana, no faltan casos que deciden el punto en cuanto a la ley de Louisiana, y que indudablemente hubieran sido citados. Quizás suponiendo que el punto en cuestión como proposición separada y distinta estaba en la mente de la corte, dadas las circunstancias del caso entonces bajo su consideración y discusión, se dió por sentado que la doctrina de Louisiana en cuanto a la jurisdicción territorial exclusiva de las respectivas cortes de jurisdicción especial en materia de abintestatos y testamentarías de Louisiana estaba igualmente establecida en Puerto Rico.

Pero supóngase, por razón del argumento, que la Corte Suprema con una sola plumada quiso establecer en el caso

de Garzot fuera de toda discusión y de una vez para siempre
la proposición de que bajo ninguna circunstancia podría una
corte de distrito insular que no fuese la del último domicilio
del causante de la herencia intervenir en una administración
judicial.   Ciertamente en ninguna otra ocasión se ha echado
a un lado la opinión de esta corte interpretando alguna ley
local, ni tenido en cuenta para nada con tan poca ceremonia.
A la época en que se dictó aquella decisión ninguna regla
local en materia de bienes inmuebles se fijó con más firmeza,
no sólo por las cortes insulares sino también por las de última
instancia en España, que la que surge del privilegio en asun-
tos *ex parte,* de seleccionar la corte más conveniente de juris-
dicción competente.   Nadie en esta isla, letrado o lego, dudó
de la existencia de ese derecho, que estuvo amparado por la
uniforme interpretación de muchos años dada, en todo caso
en que se levantó la cuestión, a los artículos 56 y 57 de la
anterior Ley de Enjuiciamiento Civil, en conexión con la
cláusula reservativa contenida en el primer párrafo del ar-
tículo 63.   Si se sostuviese que, a pesar de la expresa cali-
ficación de la regla general, el inciso 5º. del artículo últíma-
mente mencionado le confiere a la corte del último domicilio
del causante jurisdicción exclusiva de toda facultad para ac-
tuar de cualquier otra corte de distrito insular a la que las
partes interesadas puedan haber recurrido, con ello se des-
truirían centenares, y quizás hasta millares, de títulos ins-
critos tenidos por intachables por todos los interesados en
concederles sanción legal cuando se persiguió el sello de la
aprobación judicial, incluso los abogados, las cortes y re-
gistradores de la propiedad, cuyo deber consistía, cada cual
a su vez y con independiente criterio, dictaminar respecto
de los mismos.   Sería sencillamente inconcebible el que tu-
viese la Corte Suprema de los Estados Unidos la intención
de producir en un simple *ipse dixit* de una sola frase tales
resultados al resolver un caso en el que jamás se levantó,
argumentó, sometió ni estuvo envuelto el punto en cuestión.
No ha de exigirse argumento alguno para demostrar que di-

cho tribunal no tuvo tales propósitos.   Con sólo expresar la proposición queda la misma refutada.

Este no es el único caso en el calendario.   Este criterio no pretende ser el cristalizado producto de una reflexión profunda.   Se somete por el valor que pueda tener.   Puede que sea erróneo.   Si lo es, debe ser, y será, revisado y corregido.

Es posible que la sentencia de la corte de distrito en este caso deba ser revocada y en su lugar dictarse otra en favor del demandante.   Quizás la conclusión a que se llegó en la primera apelación es correcta.   La doctrina del caso de *Esterás* v. *Arroyo* puede que sea sana en el fondo, y de ser así, debe prevalecer.

En caso de que se vuelva a argumentar el caso por conpleto, y a someterse y decidirse por sus méritos, sin tener en cuenta los precedentes salvo en tanto cuanto estén los mismos bien cimentados en la sana razón y el sentido común, o ha llegado a convertirse en una regla fija en materia de bienes reales (*a rule of real property*) entonces, cualquiera que fuere el resultado, el objeto inmediato de esta opinión se habrá conseguido.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF, CON LA CUAL
ESTÁ CONFORME EL JUEZ ASOCIADO SR. DEL TORO.

Disiento por los fundamentos del caso *Martorell* v. *Ochoa,* 23 D. P. R. 31.   La opinión de la mayoría, tal como la entiendo, aprueba esa decisión y fija la ley para esta Isla.   Una corte sin jurisdicción no puede dar autorización a nadie para enajenar bienes de menores.   *Longpré* v. *Díaz,* 237 U. S. 512.

La falta de jurisdicción impide que se levante siquiera la cuestión del *color of title,* que equivale para casi todos los fines a la frase *justo título.*   Ni me parece tampoco que pueda salvarse la situación sosteniendo, según se ha sugerido, que antes de 1905 y de haber sido resuelto el caso de *Esterás* v. *Arroyo,* 16 D. P. R. 725, había la creencia general de que cualquiera corte de distrito podía conceder tal autorización.

La ley era claramente distinta, como se establece en el caso de *Martorell* v. *Ochoa,* 23 D. P. R. 31, *supra.*   No había jurisdicción ni regla de propiedad basadas en la decisión de un tribunal competente.   Desde 1889, en que el Código Civil Español empezó a regir, hasta 1902, no hubo oportunidad para aplicar la doctrina del *stare decisis.*   No discuto la buena fe de los apelados.   El *"justo título"* y la buena fe eran ambos esenciales.   El desconocimiento de la ley por parte de aquellas personas que intervinieron en el título de que se trata, no puede afectar el derecho de los menores.