Manuel M. Martínez, demandante y apelante, *v.* Pedro Vázquez Torres, demandado y apelado.

No. 5522.—*Sometido:* Diciembre 1, 1931. *Resuelto:* Mayo 24, 1932.

*Lens & Susoni* y *A. Suliveres Rivera,* abogados del apelante; *Luis Mercader,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Se trata de la reivindicación de una parcela de terreno de 32 cuerdas, situada en el barrio de Caonillas del término municipal de Utuado. La demanda fué declarada sin lugar y el demandante apeló, señalando en su alegato la comisión de cinco errores que versan todos sobre la apreciación de la prueba y la aplicación a los hechos de los preceptos del Código Civil y de la Ley Hipotecaria relativos a la adquisición del dominio por prescripción.

No hay duda alguna de que el demandante alegó y probó un título prima facie a su favor. De la certificación expedida por el Registrador de la Propiedad de Arecibo, presentada por la propia parte demandada, aparece lo que sigue.

La primera inscripción de cierta finca de sesenta cuerdas de la cual se admite que forma parte la parcela reclamada se verificó en el registro el 18 de mayo de 1902, dice textualmente la certificación, aunque seguramente no es 1902 sino 1912, de acuerdo con lo que también textualmente se hace luego constar en la misma. De la inscripción aparece que en los libros de la antigua anotaduría figura la adjudicación en pago y venta real de la dicha finca de sesenta cuerdas hecha por Juan Eduviges Collazo a Manuel Belén Pérez por escritura pública otorgada el 13 de marzo de 1878.

La segunda inscripción se verificó el 18 de mayo de 1912, y lo es la de la venta de la finca hecha por Pérez a su convecino Felipe Rivera y Rivera, casado, por escritura pública otorgada el 26 de julio de 1881.

El 2 de noviembre de 1912 el registrador inscribió la finca a favor de doña Teresa Martínez Vélez, viuda de Felipe Rivera, fallecido el 30 de noviembre de 1889, y de sus hijos Andrea, Jesús María y Francisco Manuel. Este último había fallecido, sucediéndole sus hijos, uno de los cuales murió en la menor edad sucediéndole su madre Doña Rosaura Vázquez Collazo.

El 10 de septiembre de 1912 los herederos de Felipe Rivera se confesaron deudores del demandante Manuel María

Martínez por la cantidad de $1,800, y para garantizar su deuda constituyeron hipoteca sobre la finca de sesenta cuerdas. La hipoteca causó en el registro la inscripción quinta.

La inscripción sexta y última de la finca se verificó el 17 de abril de 1913 y lo fué la de su venta judicial hecha a favor del demandante en el procedimiento que siguiera en cobro de su crédito.

Ante esa demostración ¿qué alegó y probó el demandado que sirviera de base a la corte de distrito para resolver el pleito a su favor?

Alegó que era dueño de la parcela reclamada y como tal estaba en posesión. Invocó los preceptos del Código Civil relativos a la prescripción ordinaria y a la extraordinaria como modos de adquirir el dominio. Demostró haber comprado la parcela en dos porciones, una de catorce cuerdas que medida luego resultó de diez y otra de treinta y dos que mensurada después dió diez y ocho, total veintiocho cuerdas. La porción de diez la compró a Gerónimo Ríos Medina por escritura pública de 7 de mayo de 1910 y la porción de diez y ocho la compró a José Mercedes Collazo por escritura pública de 3 de febrero de 1904. Presentó como prueba ambas escrituras que fueron admitidas sin objeción.

Además alegó, presentando prueba documental de ello, que su vendedor Ríos adquirió por compra a Vicente Andújar hecha constar en escritura pública de 8 de marzo de 1903, habiendo comprado Andújar a Vicente Bernacet, por escritura de 20 de mayo de 1898 y Bernacet a Andrea Rivera, hija y heredera de Felipe Rivera y Rivera, por escritura pública de 4 de julio de 1896. En cuanto al vendedor de la otra porción José Mercedes Collazo, alegó, presentando prueba documental y testifical para probarlo, que dicho Collazo la adquirió a su vez de Vicente Bernacet por permuta con otros terrenos hacía el espacio de siete años, o sea allá por el 1897, y desde entonces la poseía quieta y pacíficamente, habiéndola

adquirido Bernacet de la viuda e hijos de Felipe Rivera por escritura pública de 4 de marzo de 1897.

Las declaraciones del propio demandado y especialmente la de su testigo Modesto Santiago son terminantes en cuanto al hecho de la posesión de la parcela de que se trata en concepto de dueño por parte no sólo del demandado si que también de todas las personas de quienes trae causa hasta llegar a Bernacet. Dichas declaraciones están corroboradas por las de Ramón González Vargas, Narciso Nicolau Correa, José Robert Nicolau y Juan Ocasio. La posesión de los anteriores dueños Juan Eduviges Collazo, Manuel Belén Pérez, Felipe Rivera y los herederos de éste, es incuestionable.

Cuando el demandado terminó de practicar su prueba, pidió el demandante que se le permitiera introducir las declaraciones de algunos testigos. Accedió la corte y declararon Vicente Bernacet y Jesús María Rivera.

Dijo el primero que en efecto había adquirido de la hija y heredera de Felipe Rivera, Andrea Rivera y de su esposo, por escritura pública de 4 de julio de 1896, la porción de terreno de la finca de que se trata, pero dijo además que no pudo tomar posesión porque los otros herederos se opusieron. Eso no obstante admitió que la vendió a Andújar. En cuanto a la otra porción que aparece que permutó con Collazo, expresó que ciertamente adquirió la finca de los herederos de Felipe Rivera por escritura pública de 4 de marzo de 1897 y trató de permutar una porción con Collazo pero no pudo llevarse a efecto el contrato y entonces la compraventa a los herederos de Rivera se deshizo. Afirma que nunca estuvo en posesión de la finca. La declaración de Jesús María Rivera, hijo y heredero de Felipe, corrobora la de Bernacet.

Existe otra prueba del demandante sobre interrupción de posesión a la que nos referiremos más tarde.

Así quedó el caso sometido a la decisión de la Corte de Distrito de Arecibo. Al resolverlo en la forma que dejamos

indicada, en su relación del caso y opinión, se expresó, en parte, así:

"Probó el demandado que las personas que le vendieron en 1904 y 1910 las adquirieron a su vez por títulos bastantes para transferirle el dominio y por tanto justos, dentro de las exigencias de la Ley.· Arts. 1853 del Código Civil Revisado y 1952 del Código Civil Antiguo. Vázquez no compró a personas que simplemente hubieran estado en posesión de la finca, sino a poseedores que mediante títulos con todas las solemnidades notariales habían acreditado el hecho de la posesión en concepto de dueños. Los títulos ostentados por los vendedores de Vázquez eran aparentemente justos títulos bastantes para transferir el dominio de las parcelas vendidas. Títulos que son justos, verdaderos y válidos para la prescripción, justos por ser de compraventas, bastantes para transferir el dominio; verdaderos, porque no han sido argüídos de falsos; y válidos, por ser perfectos en sus requisitos externos y aun en las condiciones internas que afectan a su vida y existencia, con arreglo al artículo 1226 del Código Civil, pues hubo materia del contrato, consentimiento y causa del mismo.

"Desde 1897 en que Collazo adquirió y desde 1903 en que Ríos compró, o sea las personas que vendieron al demandado, y que poseyeron las parcelas, hasta la fecha de la interposición de la demanda, que fué en enero de 1927, transcurrieron con exceso los diez años necesarios para adquirir el dominio por prescripción entre presentes. Artículo 1858, Código Civil. El transcurso de esos años perfeccionó el título de compra. Más de diez años de posesión material en concepto de dueños, basada en un justo título y disfrutada de buena fe, públicamente, entre presentes, y sin interrupción de nadie, dieron al demandado un título contra el cual no puede irse.

"Véanse Picart v. León, 22 D.P.R. 592; Martorell v. Ochoa, 25 D.P.R. 759; Gutiérrez v. Pons, 32 D.P.R. 695; Delgado v. Encarnación, 35 D.P.R. 298.

"Para la prescripción ordinaria del dominio se necesitan la posesión de la cosa en concepto de dueño, pública y pacífica y no interrumpida; buena fe y justo título en el que posee; y lapso del tiempo establecido por la ley. Los tres requisitos se reúnen satisfactoriamente en el presente caso."

A nuestro juicio resuelto como fué el conflicto de la prueba testifical en favor de la del demandado, sin que se haya demostrado que la corte actuara movida por pasión, prejuicio o parcialidad, o que cometiera error manifiesto, precisa con-

cluir que el demandado no sólo demostró que era dueño de
la parcela en cuestión por haberla adquirido por prescripción
ordinaria, si que también por prescripción extraordinaria,
(art. 1859 Código Civil, ed. 1930), ya que su cadena de títu-
los va hasta el 1878. Su prueba demuestra que compró de
Ríos y Collazo en 1910 y en 1904, respectivamente, que su ven-
dedor Ríos adquirió de Andújar, por compra, y Andújar por
compra de Bernacet y Bernacet por el mismo título de Andrea
Rivera y ésta por herencia de su padre Felipe y Felipe por
compra de Pérez que era dueño por haberla adquirido en 1878
de Juan Eduviges Collazo, y que su otro vendedor Collazo
adquirió por permuta de Bernacet y éste por compra de los
herederos de Felipe Rivera que trae causa del mismo Juan
Eduvigis Collazo a quien compró Pérez en 1878, habiendo
todos poseído materialmente las tierras en concepto de dueños.

Veamos ahora si la posesión del demandado y sus ante-
cesores fué interrumpida. La prueba testifical resultó con-
tradictoria. Si diéramos crédito a la declaración de Berna-
cet tendríamos que concluir no sólo que fué interrumpida, sino
que él jamás tomó posesión. Pero su declaración está con-
tradicha por documentos públicos, por los hechos mismos y
por el testimonio de Modesto Santiago, robustecido por el de
los otros testigos de la parte demandada. Y ya hemos dicho
que el conflicto fué resuelto en contra de la prueba del de-
mandante.

¿Qué efecto pueden tener en cuanto a la interrupción de
la posesión, cierto procedimiento de deslinde presentado como
prueba por el demandante y la posesión que según él le diera
el márshal al adjudicársele la finca en el procedimiento en
cobro de hipoteca? Veámoslo.

El 11 de enero de 1915 compareció ante la Corte de Dis-
trito de Arecibo el demandante y alegando ser el dueño de
la finca de sesenta cuerdas, pidió su deslinde. Tramitado el
caso, se ordenó su práctica, sin que la prueba documental
muestre cuál fuera el resultado que se obtuviera. Decla-

rando el propio demandante dice que se practicó, pero no consta que se iniciara procedimiento alguno para hacerlo efectivo, dándose posesión al demandante de aquello que él mismo reconoce que poseía el demandado.

A lo sumo, dada la naturaleza del procedimiento de deslinde, podría considerarse como un requerimiento judicial, debiendo el caso regularse en tal virtud por lo dispuesto en el artículo 1847 del Código Civil, ed. 1930, a saber:

"Art. 1847.—También se produce interrupción civil por el requerimiento judicial o notarial, siempre que dentro de dos meses de practicado se presente ante el tribunal o juez la demanda sobre posesión o dominio de la cosa cuestionada."

Nada hizo el demandante hasta el 1927 en que inició este pleito, perdiendo el beneficio del requerimiento.

De la prueba sobre el ejecutivo hipotecario aparece que el márshal dió posesión al demandante de la finca de sesenta cuerdas en 1913. Declarando el propio demandante dijo que dicho funcionario había requerido al demandado. Nada con respecto al requerimiento se consigna en la diligencia de posesión extendida por el márshal en términos generales. No se llevó a declarar a dicho funcionario. El demandado declaró bajo juramento que no fué requerido y que él estaba entonces y continuó y continúa en posesión como dueño, y el propio deslinde solicitado por el demandante en 1915 lo demuestra así. Pero aceptando que fuera requerido, como no obedeció el requerimiento y nada hizo el demandante hasta el 1915 en que inició el deslinde que también dejó al demandado en posesión, la interrupción no fué eficaz en derecho.

Nada de ello, sin embargo, tiene importancia si se considera que la prueba apreciada en la forma que se ha dicho, demuestra que cuando en 1913 se adjudicó al demandante la finca de sesenta cuerdas, ya el demandado había ganado el dominio a la parcela en cuestión por prescripción extraordinaria si se va hasta el primitivo dueño Juan Eduviges Collazo y por prescripción ordinaria si sólo se toma en conside-

ración el título de las personas que directamente le vendieron las dos porciones que la forman.

Quizá sea conveniente agregar que hay prueba en los autos tendente a demostrar que el demandante, hermano del esposo de Andrea Rivera que con ella otorgó en 1896 la escritura de venta a Bernacet de que trae causa el demandado, conocía los antecedentes y la situación de hecho desde mucho antes de otorgarse la escritura de hipoteca entre otros herederos de Felipe Rivera por la propia Andrea. Él mismo admitió que cuando el otorgamiento de la hipoteca le constaba que el demandado estaba en posesión, aclarando que intentó comprarle, último extremo que contradijo el demandado.

*Por virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.