María Antonia, María Olegaria, Guillermo y Gregorio Larracuenta, demandantes y apelantes, *v.* José Fabián Joglar, Cándido Noriega y Banco de Ponce, demandados y apelados.

Núm. 7977.—*Sometido:* Marzo 8, 1940. *Resuelto:* Mayo 22, 1940.

*A. Marín Marién,* abogado de los apelantes; *Zayas Pizarro & Teissonniere,* abogados de los apelados Fabián y Banco de Ponce; *Sergio León Lugo,* abogado del apelado Noriega.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El 23 de abril de 1937, María Antonia, María Olegaria, Guillermo y Gregorio Larracuenta demandaron en la Corte de Distrito de Arecibo a José Fabián Joglar, Cándido Noriega y Banco de Ponce, en solicitud de una sentencia que condenara a Joglar a restituirles en la posesión de dos con-

dominios indivisos de una duodécima y de una tercera de otra duodécima parte de cierta finca rústica con abono de determinada suma de dinero por frutos líquidos y a Noriega a pagarles otra determinada suma de dinero por frutos líquidos, y que decretara la cancelación en el Registro de la Propiedad de las inscripciones en relación con los condominios a favor de Pedro Alonso, Pedro Such, Heraclio Costas, Cándido Noriega, José Fabián y Banco de Ponce, con imposición de las costas a los demandados.

Para ello alegó que Gregorio Larracuenta Ballester adquirió en octubre 21, 1898, la propiedad de una duodécima parte de una finca rústica situada en el barrio de Guaonico de Utuado, de doscientas ochenta y siete cuerdas, que se inscribió a su favor en el Registro;

Que Larracuenta Ballester falleció en enero 7, 1903, dejando por sus únicos y universales herederos a sus hijos naturales reconocidos, los demandantes;

Que desde 1916 Pedro Alonso, sin consentimiento de los demandantes, se posesionó del condominio y pocos meses después lo traspasó a Pedro Such y éste a su vez a Heraclio Costas;

Que a virtud de ejecución de hipoteca contra la finca en su totalidad por el demandado Noriega contra Heraclio Costas, se adjudicó a Noriega juntamente con el resto de la finca el condominio, poseyéndolo desde septiembre 20, 1921, hasta agosto 27, 1926, vendiendo en esa fecha la finca total al otro demandado Joglar, sujeta a una hipoteca a su favor por parte del precio, poseyendo la finca Joglar desde entonces. Noriega cedió luego la hipoteca al otro demandado Banco de Ponce;

Que Joglar posee en la actualidad la finca bajo la nueva mensura y descripción que se expresan;

Que las personas y entidades mencionadas al tiempo de adquirir los derechos indicados sobre el condominio, sabían que no pertenecían a sus trasmitentes, si que a Larracuenta y a su sucesión.

Siguen las alegaciones sobre frutos.

Y alegaron además como segunda causa de acción que Larracuenta Ballester adquirió en junio 2, 1900, la propiedad de otro condominio indiviso de una tercera parte de la duodécima parte de la referida finca que inscribió a su favor en el Registro, ocurriendo con dicho condominio lo mismo que con el adquirido primeramente.

Formularon los demandados excepciones previas y contestaron finalmente. Fué el pleito a juicio y la corte por sentencia de junio 27, 1938, declaró ·la demanda sin lugar, sin especial condenación de costas.

Parece conveniente transcribir la opinión que sirve de base a la sentencia. Es así:

"En la vista del juicio, la parte demandante omitió presentar prueba con respecto a la mayor parte de los hechos alegados, basándose en conclusiones sobre la contestación de los demandados, que a su juicio, admiten lo alegado en la demanda. De un examen de las contestaciones y defensas, se desprende que no existen tales admisiones, salvo alguno que otro punto, que resulta evasivo.

"Se presentó una moción de *nonsuit* al terminar la prueba de los demandantes. No pudimos resolverla inmediatamente, porque la parte actora insistía en que los documentos presentados y la demanda jurada, habían probado su caso, teniendo en cuenta las admisiones de la contestación. Era necesario algún tiempo para examinar dichas conclusiones, y la parte demandada optó por presentar su prueba antes de que el juicio fuera suspendido. Resolveremos, pues, el caso, como si la moción hubiese sido denegada.

"Los demandantes presentaron evidencia documental para justificar el título de los condominios que reclaman en sus dos causas de acción. Los demandados presentaron documentos para demostrar la forma como el título de dichos condominios fué transferido a ellos, sucesivamente. La teoría de la parte actora es que tales traspasos son absolutamente nulos, basándose en la inexistencia del contrato otorgado a favor del primer adquirente, Alonso.

"  *      *      *      *      *      *      *

"El primer traspaso cuya nulidad se alega, consistió en una venta judicial a virtud de sentencia de la Corte Municipal de Utuado, por la cual los derechos o condominios de los demandantes, sobre la finca

objeto de este pleito, se adjudicaron a Pedro Alonso, que fué el mejor postor en la subasta del caso civil 939, sobre cobro de honorarios, en dicha corte.

"Alegan los demandantes, que contra ellos no se dictó sentencia alguna, porque el fallo del juez condenó a Antonia Arroyo por sí y como madre de ellos al pago de lo reclamado, en lugar de referirse a ellos directamente.

"Examinado el expediente encontramos que la demanda fué entablada contra Antonia Arroyo por sí y como madre con patria potestad sobre sus hijos, especificando sus nombres. Que todos los demandados, incluyendo los menores, fueron emplazados personalmente, y que todos comparecieron y contestaron la demanda, después de conseguir que el Juez dejara sin efecto una rebeldía y sentencia, previamente registradas. La sentencia definitiva dispone que el actor obtenga el importe de ella de los demandados, y después los menciona diciendo: Antonia Arroyo por sí y como madre con patria potestad sobre sus menores hijos (aquí los nombres).

"Es verdad que toda acción debe ejercitarse en nombre o contra la parte realmente interesada y que la sentencia debe ser contra ella. La mejor práctica es poner primero el nombre de los menores y añadir el nombre del padre o madre, con patria potestad, en su carácter representativo; pero la fórmula empleada en el aludido pleito para demandar a los menores y para dictar sentencia, está implícitamente autorizada por el artículo 56 del Código de Enjuiciamiento Civil, ya que la madre con patria potestad tiene la misma facultad en Puerto Rico, que el tutor general, de que habla dicho artículo, cuyo precepto autoriza que la comparecencia de un menor, cuando es parte, deberá hacerse por medio de dicho tutor. Si al demandar al menor se especifica que la madre figura en concepto propio y además como madre con patria potestad, se incluye al menor como parte interesada, y la sentencia puede dictarse en la misma forma representativa.

"El otro punto en que basan los demandantes su alegaba nulidad, consiste en que la sentencia se dictó por cien dólares y la ejecución se siguió por doscientos dólares por error del Secretario al redactar la orden de ejecución.

"Generalmente un defecto de esta naturaleza, cuando la suma es menor que el fallo, no tiene importancia alguna. Cuando se ejecuta por una suma mayor de la fijada en la sentencia, la cuestión es más o menos importante, según el perjuicio que pueda haber sufrido la parte ejecutada. Si por ejemplo, se venden bienes en exceso de los que se hubiesen vendido de haberse seguido estrictamente la sentencia,

la ejecución puede anularse, o si el producto de la subasta, en cuanto al exceso, no se entregó a la parte demandada.''

''Aun aceptando que la irregularidad incurrida en dicho caso tuviera un carácter anulable, entendemos que no efecta a los títulos de los demandados, sucesivos adquirentes; no consta del Registro, según la certificación presentada, que tal error se hubiese cometido, ni se probó que los demandados conocieran el defecto. Sólo se ejecutó una sola propiedad en cuanto a los condominios, la misma que hubiese sido ejecutada si la orden de venta se hubiese anunciado por cien dólares. Además, el error no era de tal índole que hiciera inexistente la ejecución, en cuanto a terceros adquirentes, cuando más, era una venta anulable, y hubiese sido necesaria una acción previa de nulidad, y no un ataque colateral como se pretente por los demandantes en este caso. Nos inclinamos a creer, que toda acción contra los demandados estaría prescrita por ese concepto, a no ser que estuviesen afectados por un conocimiento fraudulento.

''De la certificación del Registro sobre el historial de la finca, no aparece nada en que pueda basarse una sentencia para declarar que las adquisiciones de los demandados no constituyen un justo título, y menos para considerarlas absolutamente nulas, en cuyo solo caso podría prosperar una acción directa para recobrar esos condominios, pues hay que tener en cuenta el tiempo transcurrido, que cubre la prescripción adquisitiva.''

El apelante Guillermo Larracuenta desistió del recurso. El alegato se formuló a nombre de los otros demandantes. En él se sostiene que erró la corte de distrito al resolver que la sentencia dictada por la Corte Municipal de Utuado por virtud de la cual se ejecutó el condominio de la primera causa de acción, afectó a los demandantes María Olegaria y Gregorio Larracuenta, y en todo caso a la otra demandante María Antonia Larracuenta, al no determinar si se vendió por dicha sentencia el condominio de la segunda causa de acción, al considerar válida la ejecución de dicha sentencia no obstante haberlo sido por doscientos dólares cuando la condena sólo llegaba a cien, al no dar la debida aplicación a los artículos 33 y 34 de la Ley Hipotecaria, al declarar que existía la prescripción adquisitiva y al desestimar la demanda.

■ Los autos del pleito en que fué dictada la sentencia en ejecución de la cual se vendieron en 1916 los condominios reclamados, se introdujeron en evidencia por la parte demandada. El título de la demanda es como sigue: "Francisco R. Flores, demandante, contra Antonia Arroyo por sí y como madre con patria potestad sobre sus menores hijos María Olegaria, Guillermo y Gregorio Larracuente Arroyo, y Abelardo Moyé y su esposa María Antonia Larracuente Arroyo, demandados. Acción personal sobre cobro de honorarios."

En la transcripción, la demanda no está completa. A ella sigue el emplazamiento. Su diligenciado expresa:

"Yo Luis Cortés, bajo juramento expongo: que soy mayor de 18 años; que no tengo ningún interés en este caso; que recibí el presente emplazamiento a las 3 de la tarde del día 20 de julio de 1915, y que notifiqué el mismo, personalmente, el día 21 de julio de 1915, a Antonia Arroyo, por sí y en representación de sus menores hijos, María Olegaria, Guillermo y Gregorio Larracuente, así como a éstos y a Abelardo Moyé y a su esposa María Antonia Larracuente Arroyo, demandados mencionados en d'cho emplazamiento, entregando a dicho demandado y dejando en su poder personalmente en el término municipal de Utuado, P. R., una copia de dicho emplazamiento y en poder del demandado Antonia Arroyo una copia fiel y exacta de la demanda en el pleito mencionado en dicho emplazamiento y de este diligenciamiento.

"Fechado hoy día 21 de julio de 1915.—(Fdo.) Luis Cortés, Márshal."

En agosto 2, 1915, no habiendo comparecido los demandados, el demandante les acusó la rebeldía y ésta fué anotada por el secretario en la misma fecha.

El juicio fué señalado para dos días después, dictándose sentencia como sigue:

"En este día cuatro de agosto de mil novecientos quince, que fué el señalado por la corte para la vista de este caso y en corte abierta compareció el demandante Francisco R. Flores en persona, no habiendo comparecido los demandados, cuya rebeldía ha sido anotada oportunamente.

"A solicitud del demandante se dió por leída la demanda.

"Fué introducida la prueba . . . del demandante . . .

"  *        *        *        *        *        *        *

"Y la corte, luego de oír las alegaciones del demandante y la prueba sustanciada, es de opinión que la ley y los hechos están a favor del demandante y ordena que éste obtenga de los demandados Antonia Arroyo por sí y como madre con patria potestad sobre sus menores hijos María Olegaria, Guillermo y Gregorio Larracuenta y Arroyo, y Abelardo Moyé y su esposa Antonia Larracuenta Arroyo, la cantidad de doscientos dólares, con más las costas.

"Regístrese . . .

"  *        *        *        *        *        *        *

" (Firmado) Gabriel Castejón, Juez Municipal de Utuado . . . .
"Utuado, P. R., agosto 4, 1915.—(Fdo.) Fed. M. Maestre."

En agosto 16, 1915, se ordenó por el juez a petición del demandante la ejecución de la sentencia y en septiembre 20 siguiente comparecieron "los demandados arriba citados, menores de edad representados por su madre la demandada Antonia Arroyo" y pidieron por las razones que alegaron que se les eximiera de los efectos de la sentencia acompañando su contestación. La corte oyó a las partes y ordenó "la apertura de la rebeldía, de los demandados, concediéndoseles diez días para archivar su contestación y utilizar cualquier otro recurso, siempre que dichos demandados paguen al demandante las costas causadas desde la anotación de la rebeldía." Sigue la contestación firmada así:

"Por mis menores hijos, Antonia —X— Arroyo. Testigo de la marca—Marcos Gand."

Celebrando el juicio en la forma que en ella se expresa se dictó la segunda sentencia en los siguientes términos:

"En el día de hoy, que fué el señalado por la corte para la vista de este caso y en corte abierta compareció el demandante en persona no compareciendo ninguno de los demandados.

"El demandante solicitó la vista del caso, presentando como prueba de haber sido notificados los demandados de este señalamiento con cinco días de anticipación, una declaración jurada obrante en autos. Y la corte ordenó la celebración del juicio.

"El demandante dió lectura a su demanda e introdujo la prueba...

" *        *        *        *        *        *        *

"Y la corte, luego de considerar debidamente las alegaciones del demandante y la prueba sustanciada es de opinión que la ley y los hechos están a favor del demandante Francisco R. Flores y dicta ésta su sentencia ordenando que éste obtenga de los demandados Antonia Arroyo por sí y como madre con patria potestad sobre sus menores hijos nombrados María Olegaria, Guillermo y Gregorio Larracuenta, la cantidad de cien dólares con más las costas, gastos y desembolsos del pleito.

"Regístrese esta sentencia . . .

"Dada y pronunciada en corte abierta en la Ciudad de Utuado, hoy 15 de diciembre de 1915.

"Firmado: Gabriel Castejón Hernáiz, Juez Municipal de Utuado."

Aparecen luego dos mandamientos de ejecución librados por el secretario de la corte municipal por orden del juez de la misma. El último se expidió en diciembre 28, 1915. Su primer por cuanto dice:

"Por cuanto, los días cuatro de agosto y 15 de diciembre de 1915 Francisco R. Flores como demandante obtuvo una sentencia a su favor en la Corte Municipal del Distrito Judicial Municipal de Utuado contra Antonia Arroyo por sí y como madre con patria potestad sobre sus menorés hijos María Olegaria, Guillermo y Gregorio Larracuenta Arroyo y Abelardo Moyé y su esposa Antonia Larracuenta Arroyo por la suma de doscientos dólares con interés a razón del seis por ciento por años desde el 4 de agosto de 1915 en cuanto a cien dólares y desde el 15 diciembre de 1915 en cuanto a los otros cien dólares que sea satisfecha, juntamente con nueve dólares por costas y pagos en la fecha de dicho fallo, y costas que se devenguen, en la forma en que aparecen en el récord."

Del certificado del márshal transcribimos:

"CERTIFICO que he recibido la presente orden de ejecución el día treinta de diciembre de 1915 y que he cumplimentado la misma el día 19 de enero de 1916, vendiendo en pública subasta los bienes embargados anteriormente que se describen en el acta de remate o sea todo derecho, título o intereses que tengan los demandados sobre una finca radicada en el barrio de Guaonico, término municipal de Utuado, o sea un condominio en dicha finca representado por once enteros dozavos por ciento en cuya subasta produjo un total de doscientos

cincuenta dólares de los cuales fueron abonados en el acto, doscientos veinte y nueve dólares cuarenta centavos al demandante, Francisco R. Flores, cuyo recibo firma para constancia.

"(Fdo.) Pedro de J. Vega.—Márshal."

Y del acta de remate:

"En este acto comparece Don Vicente Medina y ofrece por los bienes embargados doscientos veinticinco dólares. Pedro Alonso ofrece doscientos cincuenta dólares. Y no habiendo ningún otro postor que aventaje la hecha por el señor Alonso y transcurridos una hora 20 minutos se le adjudica al señor Alonso los bienes subastados por la suma ofrecida de doscientos cincuenta dólares dando por terminado este acto que firma el demandante y comprador para constancia."

Luego aparece la escritura pública de venta judicial otorgada el 16 de febrero de 1916 ante el notario Eduardo Marín Marién. En ella se recitan los procedimientos habidos en la corte municipal, los mandamientos expedidos, el embargo, la publicación de edictos, lo ocurrido en la subasta y se otorga:

"Y expuestos los hechos anteriormente expresados, las partes pasan a formalizar esta escritura de venta judicial bajo las siguientes ESTI-PULACIONES:

"PRIMERA: Don Pedro de Jesús Vega, en su carácter de Márshal de la Corte Municipal del Distrito Judicial Municipal de Utuado, Puerto Rico, y en uso de las facultades que la ley le confiere y en cumplimiento de la sentencia recaída en el pleito a que se ha hecho referencia, vende en nombre de los demandados Doña Antonia Arroyo, y de los hijos de ésta María Olegaria, Guillermo y Gregorio Larracuenta y Arroyo; y Abelardo Moyé y su esposa María Antonia Larracuenta Arroyo, a Don Pedro Alonso Isla, todo derecho, título e interés que las personas antes nombradas tienen sobre un condominio representado por once enteros dozavos por ciento en la finca descrita anteriormente, venta que se efectúa por la suma de doscientos cincuenta dólares, que el comprador hizo efectiva en el acto de la subasta, en moneda americana."

La escritura se inscribió en el Registro de la Propiedad en abril, 1916, según certificación del registrador, así:

' ''En su virtud, inscribo o favor de don Pedro Alonso Isla el referido condominio que en esta finca correspondía a los Larracuenta Arroyo, por título de compra en subasta pública, con los defectos subsanables de no acompañarse ni insertarse en el documento presentado constancia alguna creditiva de que la Corte Municipal de Utuado haya adquirido jurisdicción sobre la Sucesión demandada, y de no acompañarse ni insertarse además el acta de la subasta.''

Y también por certificación del registrador, aparece:

''PRIMERO:—Que al margen de la inscripción trigésima primera al folio doscientos diez y nueve vuelto del tomo cien de Utuado, se halla una nota que copiada literalmente dice así:

'' 'El defecto consignado en la adjunta inscripción treinta y uno de no constar inserto en la escritura objeto de este asiento, documento alguno creditivo de que la Corte Municipal de Utuado haya adquirido jurisdicción sobre la sucesión demandada, QUEDA SUBSANADO, por cuanto don Federico M. Maestre, Secretario de la Corte Municipal de Utuado en certificación expedida el cuatro de agosto del presente año se hace constar lo que a la letra copio:—(Se transcribe el diligenciado que ya conocemos.) Así resulta de dicha certificación . . . quedando archivado . . . en el Legajo ciento doce de documentos públicos.—Arecibo, diciembre cinco de mil novecientos diez y seis. . . . .'

''SEGUNDO:—Que al margen de la inscripción trigésima cuarta al folio doscientos veinte y cuatro vuelto del citado tomo cien de Utuado, se halla una nota que copiada literalmente dice así: 'Los defectos consignados en la adjunta inscripción 34 de no expresarse las circunstancias personales de los herederos y vecindad, QUEDAN SUBSANADOS, por haberse presentado cuatro certificaciones expedidas el 20 de enero de 1916, por Moisés Jordán, Encargado del Registro Civil de Utuado, que contiene el acta de nacimiento de . . .'

''TERCERO: Que al margen de la inscripción treinta y cinco al folio doscientos veinte y cinco vuelto del expresado tomo cien, se halla una nota que copiada literalmente dice así: 'SUBSANADOS los defectos con que se practicó la adjunta inscripción treinta y cinco, por haberse presentado certificación expedida el 13 de noviembre último, por F. E. D. M. Maestre, Secretario de la Corte Municipal de Utuado, que contiene el emplazamiento del Secretario referido a la sucesión demandada de Gregorio Larracuente Ballester, efectuado el 21 de julio de 1915, y el acta de subasta de la finca rematada, verificada el 19 de enero de 1916, por el Márshal de dicha corte Pedro de

J. Vega; y por solicitarlo así José Fabián Joglar; . . . por escritura número 27, atorgada en Utuado el 5 del actual, ante el Notario Antonio E. Suliveras Colón, la que fué presentada en unión de dicha certificación, en esta oficina a las 3 de la tarde del 10 del corriente, al asiento 199 del tomo 147 del Diario.—Arecibo, febrero 26 de 1930.' "

Aun a riesgo de extender demasiado esta opinión y de incurrir en repeticiones, hemos transcrito lo pertinente de aquellas constancias del récord que hemos estimado que, hablando por sí mismas, explican lo ocurrido en este caso.

Examinaremos en primer término la cuestión de jurisdicción. Conocemos cómo se formuló la demanda ante la Corte Municipal de Utuado, cómo se emplazó a los demandados incluyendo a los aquí demandantes apelantes entonces menores de edad, cómo se dictó sentencia, cómo compareció Antonia Arroyo a nombre de sus menores hijos los apelantes pidiendo que se les eximiera de sus efectos, cómo el juez accedió y cómo celebrada otra vista dictó de nuevo sentencia. Y conocidos esos hechos, no puede llegarse a otra conclusión que no sea la de que la corte municipal actuó con jurisdicción.

■ Los razonamientos de la corte sentenciadora sobre el particular son correctos. Bastará que agreguemos lo dicho por esta Corte Suprema por medio de su Juez Asociado Sr. de Jesús, recientemente en *Valiente v. Carrasquillo*, 56 D.P.R. 471, a saber:

"El escrito inicial, que equivale a la demanda en un pleito ordinario, fué dirigido contra José Leoncio Valiente, *'por sí y en nombre y representación de sus menores hijos Arturo Manuel y María Valiente Díaz,'* lo cual equivalía a dirigir el pleito contra Arturo Manuel y María Valiente, menores de edad, y José Leoncio Valiente, por sí y en representación de sus dos indicados hijos. A nuestro juicio, se trata de una mera cuestión de forma que no afecta ni pudo afectar los derechos sustanciales de estos demandantes, . . ."

■ Que se vendieron en virtud de sentencia de la corte municipal los dos condominios, surge claro de los documentos

transcritos. Lo que sucede es que no se dijo que se vendía un condominio de una duodécima parte y otro de una tercera parte de otra duodécima parte, si que un condominio de "once enteros dozavos por ciento", lo que pudo hacerse por tratárse de condominios indivisos en una misma finca.

No era necesario que la corte sentenciadora entrara en la explicación del particular. El hecho de la venta total fué asumido y pudo serlo no sólo partiendo de la base de la prueba si que de las propias alegaciones del demandante en su demanda.

■ Veamos ahora si la venta fué inexistente a virtud de la diferencia entre la última sentencia de la corte municipal y el mandamiento librado para su ejecución.

En este punto el juez de distrito no apreció en toda su extensión el resultado de la evidencia. Aceptó que se había cometido un error al librarse el mandamiento por doscientos dólares cuando la sentencia fué sólo por cien. Y partiendo de esa base, razona sobre las consecuencias del error, capaz a su juicio de producir la nulidad pero no la inexistencia de la venta judicial realizada a virtud del mandamiento.

Creemos, sin embargo, que la evidencia aunque confusamente tiende a demostrar que el mandamiento por doscientos dólares estuvo justificado.

La primera sentencia de la corte municipal o sea la de agosto 4, 1915, que se dictó contra todos los demandados, lo fué por doscientos dólares. Esa sentencia se dejó sin efecto accediéndose a la petición de Antonia Arroyo hecha a nombre de sus menores hijos. Su hija Antonia, casada con Abelardo Moyé, nada gestionó. Y al dictarse la nueva sentencia en diciembre 15, 1915, por cien dólares sólo lo fué contra "Antonia Arroyo por sí y como madre con patria potestad sobre sus menores hijos nombrados María Olegaria, Guillermo y Gregorio Larracuenta."

Siendo ése el caso, no puede sostenerse que esté desprovisto de base el mandamiento por doscientos dólares. Dicho

mandamiento fué librado por el secretario por orden de la corte y hace referencia expresa a las dos sentencias, constituyendo una interpretación contemporánea auténtica del alcance de las mismas.

Si concluyésemos que la interpretación tiene justificación en los autos, nada más tendríamos que considerar para desestimar el recurso. El título del primer adquirente resultaría indiscutible.

Sin embargo, como la cuestión es dudosa, nos limitaremos a dejar establecido el hecho. Con él adquiere más fuerza la conclusión a que llegara la corte sentenciadora sobre las consecuencias del defecto, esto es, nulidad a lo sumo, no inexistencia.

■■ Siendo el título anulable, juzgando el caso a la luz de lo preceptuado en el Código Civil, en la Ley Hipotecaria y lo resuelto por la jurisprudencia, contra el actual poseedor no puede prevalecer la acción de los demandantes.

El primer adquirente lo fué Pedro Alonso Isla. Compró en la subasta judicial de 1916 e inscribió su título en el Registro de la Propiedad el propio año, en abril, anotando el registrador cierto defecto relativo a la jurisdicción que se subsanó el mismo año.

Los demás adquirentes compraron de persona que tenía su título inscrito en el Registro de cuyos libros no surgía que la venta judicial de 1916 lo hubiera sido por cantidad mayor que la concedida en la sentencia o de bienes que en parte pertenecieran a una persona no condenada por la sentencia, o que existiera alguna duda más o menos fundada sobre el particular. Cuando el actual poseedor el demandado Joglar adquirió los bienes reclamados por los demandantes en agosto, 1926, ya hacía diez años que venían poseídos por Alonso y sus sucesores en derecho como dueños, con título inscrito en el Registro, continuando él en la posesión como dueño, con su título inscrito, sin que fuera en ella inquietado, sin que se impugnara su derecho hasta abril, 1937, en que este pleito fué iniciado, alegándose la inexistencia de la trasmisión a

Alonso por defectos que no constan del Registro o que fueron en el mismo subsanados. Véanse *Roméu* v. *Todd,* 206 U. S. 358 y *Ayllón y Ojeda* v. *González y Fernández,* 28 D.P.R. 67.

Por la prescripción dentro de los términos fijados por la ley se pierde y se adquiere el dominio de los inmuebles.

El dominio sobre bienes inmuebles se prescribe por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título. Artículo 1857 Código Civil, ed. 1930. Y aquí el demandado Joglar llevaba más de veinte años por sí y sus causantes en la posesión no interrumpida, en concepto de dueño, con su título inscrito, cuando la demanda se interpuso.

La buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella, y podía trasmitir el dominio. Artículo 1850 Código Civil, ed. 1930. Y aquí la buena fe de Alonso, el primer adquirente en 1916, surge de la misma transacción que celebrara. Vió anunciada una finca para venderse en pública subasta en ejecución de sentencia. Acudió. Fué el mejor postor. Pagó su dinero. No existe la más leve prueba de que supiera que había algo ilegal o informal siquiera en los procedimientos. Todo lo inducía a creer como creyó que el márshal podía trasmitirle el dominio a nombre del dueño. Y en cuanto a la buena fe de Joglar, actual poseedor, no creemos que pueda levantarse duda alguna. Véase *Martorell et al.* v. *J. Ochoa y Hermano,* 25 D.P.R. 759.

Entiéndese por justo título el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate. Artículo 1852, Código Civil, ed. 1930. Y aquí todos los títulos de las trasmisiones hasta llegar a la adquisición por Joglar, empezando por la venta en pública subasta en ejecución de sentencia dictada contra el dueño de la propiedad vendida, en 1916, son en sí legalmente bastantes para transferir el dominio y todos se probaron por sus inscripciones en el Registro. Artículo 1854 Código Civil, ed. 1930. Véanse *Martorell* v. *Ochoa,* supra, y *Picart* v. *de León,* 22 D.P.R. 592.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆

El título para la prescripción ha de ser verdadero y válido. Artículo 1853 Código Civil, ed. 1930. No existe en este caso la más leve imputación de fraude o simulación. Todo él se basa en la inexistencia de la venta judicial de 1916 que hemos concluído que fué a lo sumo anulable y en el conocimiento constructivo por parte de los adquirentes hasta llegar al actual, de las causas productoras de la inexistencia.

*Por virtud de todo lo expuesto, no habiéndose cometido ninguno de los errores señalados, debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*