**FACUNDO et al. v. YABUCOA SUGAR CO.**

No. 3564.

Circuit Court of Appeals, First Circuit.

March 10, 1941.

Edward O. Proctor, of Boston, Mass. (Guillermo Silva and Geigel & Silva, all of San Juan, P. R., on the brief), for appellants.

E. T. Fiddler, of San Juan, P. R. (Fiddler, McConnell & Gonzalez, of San Juan, P. R., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

This was a suit for annulment of foreclosure proceedings and revendication of certain real properties, brought against the present recorded owner, whose title is derived, through various mesne conveyances, from a deed executed by the marshal pursuant to a foreclosure sale. A judgment by the District Court of Humacao dismissing the complaint was affirmed by the Supreme Court of Puerto Rico, from whose judgment the present appeal is taken.

Fortunately the facts of this protracted and intricate litigation, or series of litigations, need not be set forth at length; a drastically condensed statement will suffice for the disposition of the case, in the view we take of it.

The present plaintiffs are members or successors of members of a dissolved agricultural partnership called Cintron Hermanos. This partnership was constituted by public deed in 1891, for a term expiring June 30, 1901. In 1895, to secure advances made to the partnership by El Banco Territorial y Agricola de Puerto Rico (hereinafter called the Bank), the partnership, through its managing partners, constituted a mortgage of the properties now in question, in favor of the Bank. The loan was to be repaid in 40 semi-annual instalments, the final one to fall due on April 30, 1915.

Upon expiration of the term on June 30, 1901, the partnership was dissolved.

Several instalments being in arrears, the Bank on September 30, 1902, in virtue of an acceleration clause in the mortgage, instituted summary foreclosure proceedings in the District Court of Humacao. Service of demand for payment was made upon one of the original partners only, as binding on all the members and their successors We assume, as the insular courts have held, that such service was defective, though this conclusion is challenged by the Bank with considerable force of argument.

An auction sale, as decreed by the court, was held on January 22, 1903, but no bidder

appeared. Pursuant to a further decree a second sale was held on March 17, 1903, based upon a reduction of 25% in the appraised value of the mortgaged properties. Again no bidder appeared. Thereafter, on March 26, 1903, the District Court by order adjudicated the properties to the Bank. The adjudication was recorded in the Registry of Property on May 14, 1903, and the Bank was put into possession as owner.

■ On April 28, 1903, a suit was brought in the District Court of San Juan against the Bank for a declaration that the above award of the properties to the Bank in the summary foreclosure proceedings was null and void, and for a decree "that matters be placed in the condition in which they were before the institution of the summary execution proceedings against the firm of Cintron Hermanos." The plaintiffs in this suit were two of the original partners, and the successors of a third deceased partner. The fourth of the original partners did not appear as a party. Various technical points were alleged as grounds of invalidity of the foreclosure proceedings, but at this time the sufficiency of the service of the demand for payment was not attacked. These points were raised in a separate suit because under the local mortgage law the debtor is not a party in summary foreclosure proceedings. El Banco Territorial y Agricola v. Cintron, 7 P.R.R. 194.

■ The District Court entered a decree setting aside the award. On appeal, the Supreme Court of Puerto Rico held that the second auction sale was invalid in that the sale was held in Guayama though the notice implied that it would be held at Humacao, the regular seat of the District Court. On this ground alone, the Supreme Court in its order, dated June 24, 1905, annulled the summary foreclosure proceedings "from and after the date on which the second auction sale was held in Guayama on March 17, 1903, and orders that said proceeding be restored to the condition it had at that time." Thus the court inferentially affirmed the regularity of the earlier steps in the foreclosure proceedings, including the service of the demand for payment. Cintron v. Banco Territorial y Agricola, 9 P.R.R. 220.

In compliance with the Supreme Court's judgment, the District Court of Humacao reopened the summary foreclosure proceedings and ordered another auction sale. The sale was duly held on May 19, 1906, and the properties were adjudicated to the Bank for a total bid price of $47,000, no higher offer having been made by any other bidder. On the same day the marshal executed a deed to the Bank which was recorded in the Registry of Property. The marshal's deed recites the order of the District Court, in compliance with the Supreme Court's mandate, annulling everything done in the summary foreclosure proceedings "from and after the celebration of the second auction sale held in Guayama, the seventeenth of March, 1903" and directing that another auction sale be held. However, neither the marshal's deed nor the corresponding entry in the Registry sets forth the specific steps taken by the Bank in serving the original demand for payment upon the debtor partnership. All the mesne conveyances are recorded, as is the deed of July 31, 1912, by which the Yabucoa Sugar Company, appellee herein, acquired title and under which it has remained in possession since that time. There is no suggestion that the appellee had actual notice of any defect in the original demand for payment. At no place in the records of the Registry does it appear how this demand was served. No question had been raised as to the sufficiency of the service. Indeed, it would have appeared to anyone examining the entries in the Registry that the Supreme Court had already approved the steps in the summary foreclosure proceedings up to the second auction sale. Cintron v. Banco Territorial y Agricola, 9 P.R.R. 220.

The present suit for revendication was filed on June 1, 1929. It is claimed that the summary foreclosure proceedings were invalid upon a ground never before advanced, namely, that the original demand for payment was defective because it was not served upon each of the partners. An amended complaint was filed March 1, 1932, in which "appeared for the first time in this lengthy proceeding, party Zoilo Cintron Cintron, through his heir Rene Cintron Parra." (Zoilo had not appeared as a party in the earlier suit seeking annulment of the foreclosure proceedings. Cintron v. Banco Territorial y Agricola, 9 P.R.R. 220. Just why, we cannot make out.) In a lengthy opinion the District Court held that the amended complaint should be dismissed. Various reasons were assigned, including prescription and res judicata. On appeal, the judgment of the District Court was affirmed by the Supreme Court of Puerto Rico. The Supreme Court, while expressing an inclination to agree with all the grounds taken by the District Court, rest-

ed its opinion on res judicata, the only point extensively discussed in its opinion.[1]

■ We think the judgment below should be affirmed. Without considering other defenses, we think it clear that, regardless of any defect that there may have been in the summary foreclosure proceedings by which the Bank acquired title, the Yabucoa Sugar Company has acquired an unassailable title by ordinary prescription, under the applicable provisions of the Civil Code of Puerto Rico.[2]

■ The two chief sections of the Code dealing with prescription of ownership in real property are §§ 1857 and 1859. Under § 1857, read in conjunction with § 1840, title to land by prescription results from possession "in good faith and under a proper (justo) title" for ten years as against persons present in Puerto Rico and for twenty years as against persons absent from Puerto Rico. Under § 1859 ownership of real property prescribes "by uninterrupted possession of the same for thirty years without the necessity of title nor good faith." Since less than thirty years had elapsed between the date of the marshal's deed to the Bank in 1906 and the filing in 1929 of the original complaint in the case at bar, appellee cannot invoke § 1859.

But at the time of the original complaint, appellee had been in possession for over ten years, which was long enough for the acquisition of a prescriptive title under § 1857, if the other conditions were present, since the plaintiffs during that time have admittedly "always resided in the Island of Puerto Rico."

Appellee's possession has been "in the capacity of an owner, public, peaceful, and uninterrupted" (§ 1841).

■■ Has this possession been "in good faith"? This must be presumed, unless the adversary maintains the burden of showing bad faith (§ 364). We must take it on the record before us that appellee as possessor had the "belief that the person from whom he received the thing was the owner of the same, and could convey his title" (§ 1850); also, that appellee comes within § 363, describing a bona fide possessor as a "person who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same." It is true that appellee upon acquiring the land in 1912 was made aware by the entries in the Registry of Property that a predecessor in title had taken under an auction sale pursuant to summary foreclosure proceedings against Cintron Hermanos. But so far as

---

[1] The opinion of the Supreme Court makes no comment upon the fact that partner Zoilo did not appear as a party in the previous litigation.

[2] The following sections are quoted from the Civil Code, 1930 Ed. The earlier edition of the Code (1902), which appears to be the one applicable in the case at bar, contained identical language though the section numbers were different.

"Section 363.—A bona fide possessor is deemed to be the person who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same.

"A possessor in bad faith is deemed to be any person possessing in any case contrary to the above.

"Section 364.—Good faith is always presumed, and any person averring bad faith on the part of a possessor, is bound to prove the same."

"Section 1840.—For ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law.

"Section 1841.—Possession must be in the capacity of an owner, public, peaceful, and uninterrupted."

"Section 1850.—Good faith of the possessor consists in his belief that the person from whom he received the thing was

the owner of the same, and could convey his title.

"Section 1851.—The conditions of good faith, required for possession in sections 363 and 364, Chapter I, Title V, and in section 473, Article Second, Chapter I, Title VII, Second Book, of this Code, are equally necessary for the determination of said requisite in the prescription of ownership and of other property rights.

"Section 1852.—By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question.

"Section 1853.—The title for prescription must be true and valid.

"Section 1854.—A proper title must be proven; it never can be presumed."

"Section 1857.—Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."

"Section 1859.—Ownership and other property rights in real property shall also prescribe by uninterrupted possession of the same for thirty years without the necessity of title nor good faith and without distinction between present and absent persons, with the exception mentioned in section 475, second article, Chapter I, Title VII, Second Book, of this Code."

the record disclosed, all the proceedings were regular. Good faith is not negatived under these circumstances by any doctrine of constructive notice charging appellee with knowledge of a "latent or occult" defect dehors the record. Ayllon v. Gonzalez, 28 P.R.R. 61. We thought otherwise in that case, 1 Cir., 288 F. 28, but were reversed in turn by the Supreme Court sub nom. Fernandez & Bros. v. Ayllon y Ojeda, 266 U.S. 144, 45 S.Ct. 52, 69 L.Ed. 209. To the same effect see Larracuenta v. Fabian, 56 D.P.R. 775. See also Arvelo v. Banco Territorial y Agricola, 25 P.R.R. 677, 693; Martorell v. J. Ochoa & Bro., 25 P.R.R. 707, 711, 712; Martorell v. J. Ochoa & Bro., 25 P.R.R. 731, 734.

Finally, has appellee been in possession under "a proper (justo) title" (§§ 1840, 1857), a "true and valid" title (§ 1853)? As the court pointed out in Ayllon v. Gonzalez, 28 P.R.R. 61, 67: "Just title and good faith are intimately related and a just title arises generally where the transferee believes that the person from whom he takes is the true owner and there was nothing in the record or in the facts known to him to show the defect or to put him on inquiry." The words "proper" and "true and valid" in the sections of the Code in question have never been read literally as meaning a perfect title, "as otherwise prescription would not be needed." Fernandez & Bros. v. Ayllon y Ojeda, 266 U.S. 144, 146, 45 S.Ct. 52, 69 L.Ed. 209. See People of Porto Rico v. Livingston, 1 Cir., 47 F.2d 712, 717. In Martorell v. J. Ochoa & Bro., 25 P.R.R. 707, 711, 712, the court said:

"As regards color of title, section 1853 [§ 1852 of the 1930 ed.] expressly provides that it is understood to be that which legally suffices to transfer the ownership or property right, the prescription of which is in question. In order that the title may be colorable it is not necessary that it actually transfers the ownership or property right, but that it is sufficient to transfer it although it may contain a defect which invalidates it. And this is necessarily so, because if under the name of color of title, which the law requires for prescription, is meant only a title clothed with all the internal and external requisites necessary for the real and actual transfer of ownership, prescription would be superfluous as a means of acquiring ownership."

Further, the court said in the same opinion (page 714 of 25 P.R.R.), discussing the meaning of "true and valid" in § 1853:

"We cannot give to the word 'valid' a meaning which would eliminate from our code the method of acquiring by ordinary prescription as would be the case if we should understand a valid title to be one clothed with all the internal and external requirements of the law." In a companion case to the one just quoted, also entitled Martorell v. J. Ochoa & Bro., 25 P.R.R. 731, 734, 735, the court said:

"In so far as regards the colorable title for acquisition by prescription, which in the present case is the deed executed by Juan Roure Dalmau in favor of J. Ochoa & Brother, although it could not have conveyed to the firm the ownership of the property sued for because of the invalidity of the title of the vendor, yet inasmuch as the said deed, besides conforming to all the external requirements of law, constitutes in form a title conveying ownership, it is evident that it fulfils the requirements of sections 1853 and 1854 of the Revised Civil Code (§§ 1852 and 1853 of the 1930 ed.), because if it is required that the title relied on shall convey to the purchaser in fact and in law the ownership of the thing, there would be no need for him to set up the plea of prescription and this mode of acquisition, in so far as it relates to ordinary prescription, would be superfluous and would have to be eliminated from the methods of acquiring title under our laws as unnecessary and useless."

Nor does ordinary prescription operate only in cases of voidable title, as distinguished from void title. In the present case, if the title acquired by the Bank through the marshal's deed was voidable merely, the defect not appearing in the Registry, the subsequent deed to appellee as a bona fide purchaser in 1912 gave appellee an indefeasible title forthwith, without the necessity of awaiting the lapse of the statutory period for prescription. Cf. Arts. 33 and 34 of the Mortgage Law of Puerto Rico (Rev.Stat. Arts. 6717, 6718). But ordinary prescription, as provided in § 1857 of the Civil Code, operates in favor of a subsequent possessor in the position of the appellee, even though the marshal's deed, because of extrinsic facts not appearing in the Registry, may have been void as between the Bank and Cintron Hermanos. See Martorell v. J. Ochoa & Bro., 25 P.R.R. 707, 712, 715.

In other words, "proper title" has been construed by the insular courts to mean merely that the record title must be clear;

that the possessor must have "colorable title". The matter in issue is peculiarly one of the local law of property, and we cannot say that the decisions of the insular courts construing the sections of the Civil Code dealing with prescription are clearly erroneous. Fernandez & Bros. v. Ayllon y Ojeda, 266 U.S. 144, 146, 45 S.Ct. 52, 69 L.Ed. 209.

Appellants rely heavily on Anaud v. Martinez, 40 P.R.R. 641, but this case is distinguishable, because there it appeared in the Registry that service of demand for payment in the summary foreclosure proceedings had not been made upon the debtor nor upon the debtor's attorney in fact nor upon a lessee in charge of the property; hence the subsequent purchaser having taken with notice was not a purchaser in good faith. We pointed that out when the Anaud case came here on appeal, sub nom. Cabo Rodriguez v. Anaud, 1 Cir., 54 F.2d 585, 587, 588. Furthermore, the Anaud case raised no question of prescription since the suit for revendication in that case had been brought within less than ten years after the invalid foreclosure sale. If certain expressions in Longpre v. Diaz, 237 U.S. 512, 35 S.Ct. 731, 59 L.Ed. 1080, may be taken as favoring the position of appellants in the case at bar, they must be considered as limited by the subsequent decision in Fernandez & Bros. v. Ojeda, 266 U.S. 144, 45 S.Ct. 52, 53, 69 L.Ed. 209, which explains the Longpre case as standing merely for the obvious proposition that "persons holding under a conveyance that was void upon the facts known to them could not be possessors in good faith."

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.