GABRIEL, PURA, ÚRSULA, JOSÉ LUIS y FEDERICO HERNÁNDEZ MORALES, demandantes y apelantes, *v.* WENCESLAO CARABALLO, demandado y apelado.

Número 10686.

*Sometido:* 1 de octubre de 1952. *Resuelto:* 5 de noviembre de 1952.

*Francisco González, Jr.,* abogado de los apelantes; *R. R. Rivera Correa,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

En una acción sobre reivindicación y daños y perjuicios seguida en la antigua Corte de Distrito de Humacao, los de-

mandantes Gabriel, Pura, Úrsula, José Luis y Federico Hernández Morales, alegaron ser dueños de un condominio proindiviso de una cuarta parte sobre una casa sita en la calle Lago del pueblo de Gurabo, enclavada en solar del municipio, y la cual viene siendo poseída por el demandado Wenceslao Caraballo desde el mes de junio de 1937. De acuerdo con las alegaciones de la demanda, Úrsula Hernández Rivera estuvo casada con Santiago Morales y durante el matrimonio adquirieron por título de edificación con dinero de la sociedad de gananciales la indicada casa. Falleció ab intestato la señora Hernández Rivera en diciembre de 1918, dejando entre otros bienes, un condominio indiviso de una mitad sobre la casa ya mencionada y como únicos y universales herederos suyos a sus dos hermanos Gabriel e Isidoro Hernández Rivera y a su viudo en la cuota usufructuaria legal. El heredero Gabriel Hernández Rivera falleció ab intestato en el año 1923, dejando entre otros bienes, su condominio de una cuarta parte indivisa sobre la casa que posee el demandado, y como a sus únicos y universales herederos a los aquí demandantes. Ni aquél ni éstos partieron ni liquidaron la herencia de Úrsula Hernández Rivera con su viudo en vida de éste, ni después de su muerte, con sus sucesores. Desde junio de 1937 el demandado Wenceslao Caraballo, sin título o derecho alguno y sin el consentimiento de los demandantes y en contra de la voluntad de éstos viene poseyendo la totalidad de la casa descrita en la demanda. En una segunda causa de acción los demandantes reclaman como daños y perjuicios, los frutos civiles que ha producido o debido producir su indicado condominio, calculados dichos frutos en la suma de $1,368.

El demandado aceptó estar en posesión de la finca en litigio desde junio de 1937, negó los demás hechos de la demanda y levantó las siguientes defensas especiales:

(a) Que la acción está prescrita de acuerdo con el artículo 1857 del Código Civil (ed. 1930) porque el demandado

ha poseído el inmueble con justo título, en concepto de dueño, pública, pacífica e ininterrumpidamente por más de 10 años;

(b) que el demandado es un tercero hipotecario; y

(c) que la casa en litigio, según constancia del Registro de la Propiedad de Humacao, (sic) fué edificada por Isabel Lloréns Quintana mientras estaba casada con Santiago Morales Dávila; que luego dicha Isabel Lloréns Quintana adquirió la mitad de dicho inmueble que correspondía a su esposo como heredera testamentaria de éste; que más tarde en una acción seguida ante la Corte Municipal de Caguas por Juan Jiménez García contra Isabel Lloréns Quintana, la referida casa fué vendida en pública subasta, en ejecución de sentencia, adjudicándosele al allí demandante, quien la vendió al demandado Caraballo en junio de 1937.

Después de radicada la contestación y a moción del demandado la corte a quo dictó sentencia sumaria a favor de éste. En apelación revocamos dicha sentencia y devolvimos el caso a la corte de origen para que se celebrara un juicio en los méritos. *Hernández* v. *Caraballo*, 72 D.P.R. 673.

Celebrado el correspondiente juicio en los méritos la corte a quo dictó sentencia a favor del demandado desestimando la demanda e imponiendo a los demandantes el pago de las costas y una suma de $250 para honorarios de abogado. Contra esa sentencia interpusieron los demandantes el presente recurso de apelación imputando a la corte a quo haber cometido error:

(1) Al concluir como cuestión de hecho y de derecho tomando en consideración únicamente la declaración personal del demandado, que la acción de los demandantes está prescrita;

(2) al concluir como cuestión de derecho que aun en el supuesto de que se le diera crédito a los testimonios de los demandantes al efecto de que el demandado adquirió (sic) de mala fe, tales testimonios serían insuficientes para establecer ese hecho; y

(3) al resolver que los demandantes habían obrado con temeridad en la instancia y prosecución de este pleito y en su consecuencia en condenarles a pagar honorarios de abogado.

La corte a quo concluyó que Úrsula Hernández falleció ab intestato en diciembre 21 de 1918, dejando como únicos herederos a sus dos hermanos Gabriel e Isidoro Hernández y a su viudo Santiago Morales en la cuota usufructuaria, habiendo correspondido a los hermanos Gabriel e Isidoro, como tales herederos, un condominio proindiviso de una cuarta parte a cada uno de ellos en la casa descrita en la demanda. Concluyó además dicha corte que:

"2. Isidoro Hernández vendió su participación hereditaria en la casa descrita en el párrafo que precede (y otra más) a su cuñado Santiago Morales por escritura número 118 de setiembre de 1926, digo de 25 de setiembre de 1926, ante el Notario don Miguel Rodríguez Alberty, pero no así Gabriel Hernández Rivera quien falleció el día 4 de enero de 1923 sin haber dispuesto de su participación hereditaria y habiendo dejado como sus únicos y universales herederos a sus hijos que son los demandantes en este caso.

"3. El viudo Santiago Morales Dávila casó en segundas nupcias con Matilde digo Isabel Matilde Lloréns, casado con la cual falleció el 12 de octubre de 1935, bajo testamento que otorgó el día 5 de septiembre de 1935 ante el notario Antonio L. López, habiendo instituído por su única y universal heredera a su dicha esposa Isabel Matilde Lloréns.

"4. El 23 de junio de 1936, Isabel Matilde Lloréns inscribió, por herencia testada, la mitad de la finca anteriormente descrita al folio 128, vuelto, del tomo 45 de Gurabo.

"5. A la misma fecha, y a la inscripción primera, al folio 191 del tomo 45 de Gurabo, la misma Matilde Lloréns inscribió la otra mitad de la casa a nombre suyo como la mitad de los bienes gananciales que le correspondía por su matrimonio con Santiago Morales; en dicha inscripción se hizo constar que la casa había sido edificada por dicho matrimonio.

"6. Juan Jiménez García demandó a Isabel Lloréns ante la Corte Municipal de Caguas en cobro de la suma de CUATROCIENTOS SETENTA Y DOS DÓLARES ($472) y obtuvo sentencia a su favor luego de habérsele anotado la rebeldía a la demandada, y previo

los trámites correspondientes de ejecución de sentencia, el már-shal de la corte adjudicó la casa objeto de esta acción a dicho Juan Jiménez García, por la suma de DOSCIENTOS DÓLARES ($200), abonados a cuenta de su reclamación. En 23 de junio de 1936, Juan Jiménez García inscribió su derecho de propiedad sobre la referida casa al folio 192 del tomo 45 de Gurabo, libre de cargas.

"7. Por escritura número 141 de 8 de junio de 1937 otor-gada ante el Notario Antonio L. López, Juan Jiménez García y su esposa vendieron la mencionada casa, libre de cargas, a Wenceslao Caraballo por el precio de TRESCIENTOS DÓLARES ($300). Dicha venta fué inscrita el 17 de junio de 1937 al folio 193 del tomo 45 de Gurabo, habiendo sido ésta la última inscripción relacionada con dicha finca.

"8. Cuando Wenceslao Caraballo compró la casa en litigio, la misma aparecía inscrita libre de cargas a nombre de su ven-dedor Juan Jiménez García y no aparecía del Registro vicio alguno que invalidase el derecho de éste ni pudo el comprador, aquí demandado, tener conocimiento de ningún defecto intrín-seco que surgiese de la faz del título del inmueble.

"9. A juicio del tribunal el único conocimiento que tenía el demandado Wenceslao Caraballo al adquirir la casa fué lo que aparecía del Registro; no le da crédito el tribunal a la prueba del demandante al efecto de que el demandado tenía conocimiento de que una parte de la casa pertenecía no a Isabel Lloréns sino a los herederos de Gabriel Hernández.

"10. De la prueba de los demandantes surge que la casa ob-jeto de este pleito la hubo Santiago Morales en matrimonio con su primera esposa doña Úrsula Hernández Rivera por cons-trucción a sus expensas no habiendo nunca pertenecido a la so-ciedad de gananciales que luego constituyó dicho Santiago Mo-rales por virtud de su segundo matrimonio con Isabel Lloréns. Así aparece de la escritura número 118 de 25 de septiembre de 1926 otorgada ante el notario Miguel Rodríguez Alberty en la cual la propia Isabel Lloréns admite ese hecho. No obstante, la prueba creída por el tribunal es al efecto de que el demandado nunca tuvo conocimiento de ese hecho ni de la escritura men-cionada, habiendo él adquirido de buena fe.

"11. El demandado ha venido poseyendo la finca en litigio en concepto de dueño, pública, pacífica e ininterrumpidamente desde la fecha de su adquisición hasta la fecha de la demanda,

habiéndola poseído en igual concepto sus anteriores dueños, habiéndola poseído entre todos por un período mayor de diez (10) años.

"12. Los demandantes han obrado con temeridad en la instancia y prosecución de esta acción."

Hemos examinado la transcripción de evidencia y no tenemos duda de que las anteriores conclusiones de hecho están suficientemente sostenidas por la prueba.

▆▆▆▆ Discutiendo el primer error los apelantes arguyen (a) que su acción no está prescrita según resolvió el tribunal inferior porque el demandado no ha poseído la finca en litigio por más de diez (10) años con antelación a la radicación de la demanda, y (b) que el apelado no ha poseído dicha finca con buena fe. En relación con la cuestión de prescripción bastará decir que si bien es cierto que el demandado alegó en su contestación que venía poseyendo la casa en litigio desde junio de 1937, la prueba demuestra que Isabel Matilde Lloréns inscribió a su nombre en el Registro de la Propiedad de Caguas el dominio de dicha casa el día 23 de junio de 1936. Demuestra además la prueba que desde antes de esa fecha la referida Isabel Matilde Lloréns venía poseyendo la casa primero, en unión a su esposo y luego, al morir éste, en concepto de única dueña hasta que dicha finca fué vendida judicialmente en marzo de 1936 a Juan Jiménez García, quien a su vez la poseyó hasta la fecha en que la vendió al demandado Caraballo, en junio de 1937.(¹) Para computar el tiempo de posesión establecido por el artículo 1857 del Código Civil (ed. 1930)(²) el demandado apelado podía completar el tiempo necesario para la prescripción uniendo al suyo el de los anteriores dueños. Artículo 1860 del Código Civil;·

---

(¹) Los demandantes intentaron probar, mediante la declaración de dos testigos, que poseyeron conjuntamente con Juan Jiménez García la casa en litigio pero la corte a quo no dió crédito a dichos testimonios. El récord no revela que al así actuar cometiéra error manifiesto.

(²) Dicho artículo lee como sigue:

"El dominio y demás derechos reales sobre bienes inmuebles se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título."

*Dumont* v. *El Registrador de Guayama,* 30 D.P.R. 289; *Pérez* v. *Colón,* 40 D.P.R. 397; *Mollá* v. *McK. Jones,* 41 D.P.R. 911. En el supuesto de que la defensa de prescripción no estuviere alegada con la debida suficiencia en la contestación, ésta puede considerarse enmendada a los fines de conformarla a la prueba. *El Pueblo* v. *Sucesión Valdés,* 31 D.P.R. 223; *Maniscalco & Nuccio* v. *Sancho Bonet, Tes.,* 51 D.P.R. 515; *Viñas* v. *Hernández,* 60 D.P.R. 276; *Tuya* v. *White Star Bus Line, Inc.,* 59 D.P.R. 790; *Sucn. Cuadra* v. *López,* 41 D.P.R. 66. Regla 15 (*b*) de las de Enjuiciamiento Civil. En tal caso resulta claro que el demandado apelado ha poseído la susodicha casa por más de diez años.

■ Los apelantes insisten también en que la posesión del apelado no ha sido de buena fe, requisito éste indispensable para que pueda correr la prescripción ordinaria del dominio y demás derechos reales. Sin embargo, sus esfuerzos van dirigidos a atacar la apreciación que de la prueba sobre ese hecho hizo la corte a quo. "La buena fe del poseedor—dice el artículo 1850 del Código Civil—consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella, y podía transmitir su dominio." Arguyen los apelantes que la prueba demuestra preponderantemente que el apelado tenía conocimiento de que el vendedor Juan García Jiménez no era dueño del condominio de los apelantes. Se olvidan sin embargo, de que la prueba sobre ese extremo fué contradictoria y que la corte a quo resolvió el conflicto de la misma en contra de ellos. La corte podía correctamente estimar probado, como lo hizo, con el solo testimonio del demandado y frente a los testimonios en contrario de los demandantes, que el demandado no tenía conocimiento de la existencia de defectos en su título. Al consignar como probado ese hecho, la corte le dió entero crédito al demandado Caraballo. "La evidencia directa de un testigo que merezca entero crédito— dice el artículo 380 del Código de Enjuiciamiento Civil (18 de la Ley de Evidencia)—es prueba suficiente de cualquier hecho, salvo perjurio o traición." Como dijimos en *Balles-*

*ter* v. *Farm & Dairy Products, Inc.*, 58 D.P.R. 479, los testigos se pesan, no se cuentan, y el juez sentenciador, que vió y oyó declarar a los testigos, pesó la prueba y a su juicio la balanza se inclinó del lado del demandado. Véanse además, entre otros, los casos de *Gutiérrez* v. *Pérez et al.*, 60 D.P.R. 932; *Ochoteco, Jr.* v. *Córdova*, 47 D.P.R. 554; *Díaz* v. *Hamburger Bros. & Co.*, 44 D.P.R. 901; *Meléndez* v. *Morales,* 43 D.P.R. 807 y *Pol* v. *Suau, Fiol & Co.*, 44 D.P.R. 71.

▆ Por otro lado, aun cuando la corte a quo no hizo pronunciamiento específico alguno sobre la defensa de tercero levantada por el demandado, el récord demuestra que dicho demandado compró de una persona que, según el Registro de la Propiedad, aparecía con derecho a venderle, sin que del mismo registro aparecieran claramente vicios que hicieran nulo el título inscrito trasmitido y habiendo dicha corte concluído que el referido demandado nunca tuvo conocimiento de que los demandantes tuvieran participación alguna en el inmueble, puede y debe considerarse a aquél como un tercero de acuerdo con el artículo 34 de la Ley Hipotecaria. Véanse, entre otros, los casos de *Annoni* v. *Sucn. Nadal*, 59 D.P.R. 640; *Larracuenta* v. *Fabián*, 56 D.P.R. 775, 789 y *Ayllón y Ojeda et al.* v. *González y Fernández et al.*, 28 D.P.R. 67.

▆ No se cometió el primer error señalado. Tampoco se cometió el segundo. En éste se discuten ciertos comentarios y razonamientos del juez sentenciador sobre la prueba de los demandantes al efecto de que aún en el supuesto de que hubiera creído dicha prueba tendría dudas sobre si la misma era suficiente para establecer la mala fe del demandado. En realidad ello era innecesario porque dicho juez no dió crédito a la prueba de los demandantes. Sin embargo, esto no implica que se haya cometido error. En el supuesto de que los razonamientos expuestos a ese efecto por el juez sentenciador fueran erróneos, el recurso de apelación se da contra la sentencia y no contra sus razonamientos o fundamentos. *Bird* v. *Bird*, 69 D.P.R. 369; *Ex parte Montalvo*,

70 D.P.R. 462; *Rivera* v. *Hernández*, 70 D.P.R. 549; *Varela* v. *Fuentes*, 70 D.P.R. 879; *Rodríguez* v. *Suárez*, 71 D.P.R. 728; *Santiago* v. *González*, 71 D.P.R. 942.

El tercer error ataca el pronunciamiento en cuanto al pago de honorarios de abogado por los demandantes. La corte a quo resolvió que "los demandantes han obrado con temeridad en la instancia y prosecución de esta acción." No se nos ha demostrado que al así hacerlo se cometiera error. En ocasión anterior hemos dicho que "la concesión de honorarios de abogado es imperativa en el tribunal sentenciador en aquellos casos en que a su juicio ha habido temeridad de parte de la persona contra quien se dicta sentencia." *Font* v. *Pastrana*, 73 D.P.R. 247, 251.

*No habiéndose cometido los errores señalados por los apelantes, se confirma la sentencia apelada.*